## IN THE UNITED STATES DISTRICT COURT
## FOR THE NOTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| GRADY KITTRELL, MICHAEL GRIMES, CRAIG THOMAS, JAMEY SAXON IRA, SANDRA SAXON IRA, JAMEY SAXON, M. LEDBETTER TRUST, LAUREN ROBERTS, ZACH DAVIS, LISA JANE HADLEY, JILL HADLEY, SARAH BUFFTON, MICHAEL HAYDEL, ROBERT MOORE, ADRIANNE CHRISTY IRA, DR. KAHLID DIAB, <br><br> Plaintiffs, <br><br> v. <br><br> CRAIG ALLEN, an individual, MELISSA TARKENTON-ALLEN, an individual, VIRGINIA VOHS, an individual, C.M. ALLEN CAPITAL MANAGEMENT, INC., a Georgia corporation, MARY ELAINE ALLEN, an individual, TEDDY ALLEN, an individual, CHARLOTTE ALLEN, an individual, and BEN ALLEN, an individual, <br><br> Defendants. | Civil Action No. 1:24-cv-00786-SDG |

## MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6) OR ALTERNATIVELY FOR A MORE DEFINITE STATEMENT PURSUANT TO FED.R.CIV.P. 9(B) AND MEMORANDUM IN SUPPORT

Defendants, Melissa Tarkenton Allen ("Melissa"), Mary Elaine Allen ("Mary

Elaine"), Teddy Allen ("Teddy"), Charlotte Allen ("Charlotte") and Ben Allen

("Ben") (collectively "Defendants") hereby move this Court to Dismiss Plaintiffs' claims against them because Plaintiffs' Complaint fails to state any claim. In support of the Motion, Defendants submit this Memorandum.

<u>**INTRODUCTION AND STATEMENT OF FACTS**</u>

On February 21, 2024, Plaintiffs instituted this action. On March 1, 2024, Plaintiffs served Defendants. On March 1, 2024, Plaintiffs and Defendants stipulated that Defendants would have through and including April 22, 2024, to respond to Plaintiffs' Complaint. This Motion is timely.

Melissa and Craig Allen ("Craig") are divorcing. Mary Elaine, Teddy, Charlotte, and Ben (collectively "the Children") are the 4 children of Craig and Melissa. Craig, once successful, has now abandoned his family, and as far as Defendants know, he has failed in business. Melissa and the Children are struggling, as one might expect, and this spurious lawsuit, based on speculation, supported by only the thinnest of allegations, makes an already bad situation so much worse. Melissa did not work outside the home during the marriage and, only now, as a result of Craig's abandonment, Melissa is trying to launch a career selling real estate. In addition to everything else on her plate, she must now deal with this litigation. It's a lot.

Plaintiffs, wealthy sophisticated investors, voluntarily participated in a risky and aggressive investment strategy managed by Craig. Maybe Craig took money, as

Plaintiffs allege, or maybe the investment strategy simply failed. No doubt that information will be revealed later through discovery. In any event, Defendants were not involved. In contrast, Grady Kittrell, the first named Plaintiff, is believed to have recruited the other Plaintiffs to invest with Craig. On information and belief, if Craig did anything wrong, Kittrell was likely complicit and is now attempting to deflect attention by leading the charge on this suit. Plaintiffs, other than Kittrell, should consider and investigate. Again, Defendants were not involved.[1]

According to Plaintiffs, Craig orchestrated a Ponzi scheme and stole almost $10 million from Plaintiffs. Dkt. 1 at ¶ 1. In the Complaint, Plaintiffs seek relief pursuant to the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq*.; the Securities Act of 1933, 15 U.S.C. § 77a *et seq*.; and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*. Dkt. 1 at ¶ 31-32.

Plaintiffs do not allege that the Children did anything wrong, but only speculate that the Children might be in possession of ill-gotten gains.

Plaintiffs only allege the following facts as to Melissa:

1. "Melissa Tarkenton-Allen ("Tarkenton"[2]) demonstrated not only knowledge of elements of Craig Allen's fraudulent scheme but actively

---

[1] Obviously, the Court is bound to accept the well-pled facts, as pled in the Complaint, as true for purposes of this Motion. Defendants provide the foregoing information only for background. Defendants are not asking this Court to rely on facts other than those in the Complaint, and as important, those facts that are not in the Complaint, as set forth, herein.

[2] Melissa is Fran Tarkenton's daughter. Fran Tarkenton has nothing to do with this litigation. Seemingly, Plaintiffs' invoke his name for impact and with the hope that Fran Tarkenton will pay them to go away. Not happening.

endeavored to secrete her husband's whereabouts upon discovery of the massive fraud." Dkt. 1 at ¶ 1;

2. "After receiving a collective investment of more than $9,850,000 from Plaintiffs, Defendants Craig Allen and Tarkenton began stealing money from the Fund[3] so that they could maintain a lavish and extravagant lifestyle. While perpetrating the fraud, Defendant Craig Allen concealed his act of fraud and embezzlement by forging counterfeit financial statements and disseminating the fraudulent documents to investors, and statements by Defendant Tarkenton evidence her knowledge of falsified documents." Dkt. 1 at ¶ 2;

3. "Defendant Tarkenton did not confess. Instead, she continued concealing the fraud and the fact that she (and her children) had enjoyed and were continuing to enjoy the ill-gotten gains they derived from Craig Allen's Ponzi scheme and fraud." Dkt. 1 at ¶ 5;

4. "Upon arriving at Defendant Allen's house, Mr. Kittrell was met at the door by Defendant Tarkenton, Defendant Allen's wife." Dkt. 1 at ¶ 66;

5. "Unprompted by any business-related question, Defendant Tarkenton promptly told Mr. Kittrell that the Fund had been liquidated into a cash holdings and insisted that 'it was not a Ponzi scheme.'" Dkt. 1 at ¶ 67;

---

[3] The "Fund" refers to The Cheetah Fund L.P., the limited partnership central to this case. Dkt. 1 at ¶ 37.

6.  "During Mr. Kittrell's discussion with Defendant Tarkenton, she refused to disclose the whereabouts of her husband." Dkt. 1 at ¶ 69;

7.  "Upon learning that the Elliot Davis documents being sent by Defendant Allen were counterfeit and forgeries, Mr. Kittrell reached out to Defendant Tarkenton to express his concerns." Dkt. 1 at ¶ 73;

8.  "Again, upon merely mentioning that the limited partners had found 'some discrepancies' in the Elliot Davis accounting documents, Defendant Tarkenton quickly stated '**we** let them go. They were too expensive.' (emphasis added)[.]" Dkt. 1 at ¶ 74;

9.  "Mr. Kittrell then asked that Defendant Tarkenton assist the limited partners in accessing the books and records of the partnership (as was their legal right)." Dkt. 1 at ¶ 75;

10. "Defendant Tarkenton refused to provide the limited partners with access to any business or personal bank account statements. Instead, she said that she would give Mr. Kittrell access to Defendant Allen's office. Mr. Kittrell had no intention of entering the home of Defendant Allen and Defendant Tarkenton unaccompanied by a third party. Consequently, Mr. Kittrell asked Defendant Tarkenton's brother to accompany Mr. Kittrell. Notably, when Mr. Kittrell arrived to inspect the office in an effort to retrieve and examine the Fund's books and records, the office obviously had been

emptied out (*e.g.*, empty drawers and only two documents remained in the room)." Dkt. 1 at ¶ 76.

11. "Defendants Melissa Tarkenton-Allen and Virginia Vohs committed multiple acts of wire fraud by sending telephonic communications (texts, calls, bank wires), via wire in interstate commerce, that were intended to conceal Craig Allen's fraud—from which they were at least a knowing accomplice and direct beneficiaries." Dkt. 1 at ¶ 109;

12. "Defendant Allen committed fraud to lull Plaintiffs into investing millions of dollars into The Cheetah Fund L.P., which he and his wife then diverted to purchase expensive and luxurious personal property and real estate to their own, personal benefit." Dkt. 1 at ¶ 125;

13. "Mrs. Tarkenton-Allen knew that these funds were being unlawfully diverted by her husband, and knowingly spent these funds in interstate commerce via transactions that exceeded $10,000." Dkt. 1 at ¶ 126;

14. "[T]he Fund was suffering losses, as well as being raided by unauthorized withdrawals by Defendant Allen and Defendant Tarkenton." Dkt. 1 at ¶ 172;

15. "During Plaintiffs' investigation relating to Defendants' fraud, Mrs. Tarkenton-Allen made false and misleading statements for the purposes of concealing her husband's fraud." Dkt. 1 at ¶ 175;

16. "Mrs. Tarkenton-Allen also made false statements of fact for the purposes of concealing her own involvement in the fraudulent scheme and/or her personal use of ill-gotten gains." Dkt. 1 at ¶ 176; and

17. "Mrs. Tarkenton-Allen also assisted Defendant Allen conceal his fraud by, among other things, (1) propagating to Plaintiffs the story that her husband need to attend a rehabilitation program; (2) making affirmative statements that 'this is not a Ponzi scheme' and 'we fired Eliot Davis'; (3) emptying our Defendant Allen's office of any documents that evidenced the fraudulent scheme; and (4) refusing to provide documents to which Plaintiff were legally entitled, like banking records." Dkt. 1 at ¶ 175-177.

Plaintiffs have alleged 3 claims against Melissa: (1) that she participated in wire fraud; (2) that she conducted transactions of $10,000 or more with ill-gotten gains; and (3) that she fraudulently concealed material facts from Plaintiffs. However, none of the above alleged facts, individually, or in total, are sufficient to establish any legal claim against Melissa. Stated more formally, Plaintiffs have failed to allege any fact that sufficiently "nudges their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs identify only two after-the-fact interactions as the bases for their claims against Melissa. Neither of these interactions occurred prior to Craig's alleged theft of the Plaintiff's money and none of the facts show that Melissa participated or even

knew about Craig's alleged fraudulent scheme. In fact, the factual allegations as to Melissa are entirely consistent with the truth, Craig abandoned Melissa and his children, and Melissa knows nothing about Craig's business or Plaintiffs' money.

This Court should dismiss Plaintiffs' claims for failure to state a claim for which relief can be granted. As Plaintiffs have not even alleged that the Children engaged in any wrongdoing, this Court should dismiss the Children from the case. Plaintiffs' allegations against Melissa fail to establish more than speculation that Melissa knew Craig was engaged in some wrongdoing. Plaintiffs fail to allege that Melissa was in any way in privity with Plaintiffs or that she owed them any duty to disclose, or otherwise.   This Court should dismiss the claims outright or, at a minimum, require Plaintiffs to plead specific facts sufficient to establish a viable claim against Melissa.

## ARGUMENT AND SUPPORTING AUTHORITY

I.   **The Court should dismiss the Complaint against Defendants pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs failed to state any claim upon which relief can be granted.**

A court should dismiss a claim under Fed. R. Civ. P. 12(b)(6) unless the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Plaintiff must allege sufficient facts to make his claims plausible, not just conceivable. *Twombly,* 550 U.S. at 570 (stating that a

plaintiff's claims must be dismissed if they have not alleged facts sufficiently plausible to "[nudge] their claims across the line from conceivable to plausible"). Merely parroting the elements of a cause of action will not suffice. *Id*. at 555.

> **A. The Court should dismiss the Children from the lawsuit because Plaintiffs failed to allege any facts to show that the Children possess ill-gotten gains.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 678. Plaintiffs alleged no "factual content" regarding the Children. Quite literally, Plaintiffs failed to state any claim against the Children.  In Count 9, Plaintiffs allege that through no fault of their own the Children have been unjustly enriched.  Plaintiffs failed to allege any facts to show that the Children did anything wrong or that they actually received or possess any ill-gotten gains. Plaintiffs do not allege a single transaction where any Plaintiffs' money was paid or transferred to the Children. Plaintiffs have not alleged any voidable transfers or fraudulent conveyances.  They have set forth nothing more than mere speculation that the Children might have ill-gotten gains in their possession. Plaintiffs have failed to allege any legal authority establishing any ability for private parties to add, include or maintain litigation against mere relief parties. The notion offends Fed.R.Civ.P.

Rule 12(b)(6).  We have located no such authority upon which Plaintiffs could rely. Therefore, the Court should dismiss the Children from this case.

### B. The Court should dismiss Melissa pursuant to Fed. R. Civ. P. Rule 12(b)(6) from the lawsuit because Plaintiffs failed to state a claim upon which relief can be granted.

Plaintiffs have alleged 3 claims against Melissa: (1) that she participated in wire fraud as a predicate act of a RICO claim; (2) that she conducted transactions of $10,000 or more with ill-gotten gains as a predicate act of a RICO claim; and (3) that she fraudulently concealed material facts from Plaintiffs. However, Plaintiffs did not allege any facts to sufficiently establish any legal claim against Melissa. Stated more formally, Plaintiffs have failed to allege any fact that sufficiently "nudges their claims across the line from conceivable to plausible." *Twombly* at 570. Plaintiffs identify only two after-the-fact interactions as the bases for their claims against Melissa. Neither of these interactions occurred prior to Craig's alleged theft of the Plaintiff's money and none of the facts show that Melissa participated or even knew about Craig's alleged fraudulent scheme. For the following reasons, this Court should dismiss Plaintiffs' claims for failure to state a claim for which relief can be granted.

### 1. Plaintiffs did not set forth plausible facts to show that Melissa participated in a "pattern of racketeering" necessary pursuant to 18 U.S.C. § 1962(c).

Pursuant to 18 U.S.C. § 1962(c) of the RICO act, "[i]t shall be unlawful for any person employed by or associated with an enterprise…to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." A "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). "Racketeering activity" may include, but is not limited to, the predicate acts of wire fraud [18 U.S.C. § 1343] and "engaging in monetary transactions in property derived from specified unlawful activity" [18 U.S.C. § 1957]. 18 U.S.C. § 1961(1)(B). For the following reasons, Plaintiffs have failed to state a claim for a civil RICO action against Melissa because they have not established the requisite pattern of racketeering.

> **a. Plaintiffs did not set forth plausible facts to state a claim for wire fraud pursuant to 18 U.S.C. § 1343 as a predicate act for their RICO claim.**

To state a claim for wire fraud pursuant to 18 U.S.C. § 1343, a Plaintiff must show that the Defendant "(1) intentionally participate[d] in a scheme to defraud another of money or property and (2) use[d] [wire communications] in furtherance of that scheme." *Wayne Johnson for Cong., Inc. v. Hunt*, 2024 U.S. App. LEXIS 2850, *8-10 (11th Cir.).

Pursuant to Fed. R. Civ. P. 9(b), claims of fraud are held to a higher pleading standard, requiring that "a party must state with particularity the circumstances constituting fraud." *McWhorter v. Transunion LLC*, No. 1:21-CV-01753-SDG, 2022

U.S. Dist. LEXIS 179796, *6 (N.D. Ga.).To satisfy Rule 9(b), a plaintiff must identify: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff; and (4) what the defendants gained by the alleged fraud." *Id*. at *7 (punctuation omitted). "[W]hen the alleged fraud involves multiple defendants, Rule 9(b) requires that the plaintiff plead sufficient facts to 'inform each defendant of the nature of [its] alleged participation in the fraud.'" *Transatlantic, LLC v. Humana, Inc.*, 666 Fed. Appx. 788, 789 (11th Cir. 2016) (quoting *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997)). Plaintiffs' Complaint in this case includes no such specificity as to Defendants.

Plaintiffs alleged in the Complaint that "Defendants Melissa Tarkenton-Allen and Virginia Vohs committed multiple acts of wire fraud by sending telephonic communications (texts, calls, bank wires), via wire in interstate commerce, that were intended to conceal Craig Allen's fraud—from which they were at least a knowing accomplice and direct beneficiary." Dkt. 1 at ¶ 109. Plaintiffs identified no specific communications. In fact, Plaintiffs described only two after-the-fact communications involving Melissa. Those two interactions were between Plaintiff Kittrell and Melissa. Dkt. 1 at ¶ 66-70, 73-76. The first interaction was in-person and used no "wires" that would satisfy 18 U.S.C. § 1343. Only the second interaction

was allegedly electronic. Dkt. 1 at ¶ 73 ("Mr. Kittrell *reached out* to Defendant Tarkenton") (emphasis added). Plaintiffs did not set forth plausible facts to show that Melissa intentionally participated in a scheme to defraud Plaintiffs of their money.

In that interaction, Plaintiff Kittrell alleged that:

> …upon merely mentioning that the limited partners had found 'some discrepancies' in the Elliot Davis accounting documents, Defendant Tarkenton quickly stated '**we** let them go. They were too expensive.' …Again, these suspicious statements made it clear that Defendant Tarkenton had intimate knowledge of the Fund's business affairs.

Dkt. 1 at ¶ 74 (emphasis in original). Assuming, as the Court must, for purposes of this Motion, that Melissa stated that she and her husband released their accountants, the statement fails to establish any claim. That Kittrell, allegedly jumped to a wild conclusion is irrelevant. Melissa's after-the-fact statement that she and Craig terminated the expensive accounts hardly leads to any conclusion Melissa "had intimate knowledge of the Fund's business affairs" or that she knew he was allegedly defrauding investors. Plaintiffs did not show that Melissa intentionally participated in her husband's alleged fraud. They did not show that Melissa had any communication with any Plaintiff before or during the alleged scheme, that she was an owner in the Fund, that she was an employee of the Fund, that she had any control over the assets of the Fund, that she gave any Plaintiff any investment advice, or that she knew of any alleged fraudulent scheme. None of it.  Rather, the worst thing

Plaintiffs could say about Melissa is that after-the-fact she knew she and Craig fired accountants because the accountants cost more than Craig and Melissa could afford to pay.  Therefore, Plaintiffs failed to state a claim for wire fraud pursuant to 18 U.S.C. § 1343.

Additionally, Plaintiffs failed to satisfy Rule 9(b) because they failed to state their fraud claims with particularity. Plaintiffs alleged in the Complaint that Melissa "committed multiple acts of wire fraud by sending telephonic communications (texts, calls, bank wires), via wire in interstate commerce, that were intended to conceal Craig Allen's fraud." Dkt. 1 at ¶ 109. Plaintiffs identified no such communication.  Not one.  Rather, Plaintiffs identified only one alleged electronic interaction involving Melissa (the Allens fired the accountant they could no longer afford), and that transaction was after the alleged fraud. Dkt.1 at ¶ 73-76. Plaintiffs did not specify any text messages, phone calls, or bank wires that Melissa made that indicated an intention to conceal, or otherwise participate in, a fraud. Plaintiffs failed to state when and where these "texts, calls, and bank wires" were alleged to have occurred. They also failed to state how the content and manner of Melissa's statements misled Plaintiffs, or what Melissa gained from making the allegedly misleading statement. *See e.g., Eckart v. Allstate Northbrook Indem. Co.*, 2023 U.S. Dist. LEXIS 28039, *14-15 (N.D. Ga.)(In addition to other reason, the Court granted defendant's motion to dismiss wire fraud as a predicate act to a RICO claim because

plaintiff failed to describe the instances of fraud with the specificity required by Fed. R. Civ. P. Rule 9(b)).

Further, Plaintiffs made vague allegations against two Defendants—Melissa Allen and Virginia Vohs—in the same count. In addition to not specifying any particular "texts, calls, and bank wires" that show wire fraud, Plaintiffs did not specifically attribute any such telephonic communications to either Melissa or Virginia Vohs, individually except the conversation in which Melissa said the Fund stopped using Elliot Davis' services.  Fed. R. Civ. P. Rule 9(b) requires a heightened standard of pleading that informs each defendant of their alleged participation in a fraud. Plaintiffs failed to allege their fraud claims as to Melissa with any required particularity. Therefore, Plaintiffs failed to state a claim for wire fraud pursuant to 18 U.S.C. § 1343 as a predicate act to a civil RICO claim pursuant to 18 U.S.C. § 1961(1)(B).

> **b. Plaintiffs did not set forth plausible facts to state a claim for engaging in monetary transactions in property derived from specified unlawful activity pursuant to 18 U.S.C. § 1957 as a predicate act for their RICO claim.**

To state a claim for engaging in monetary transactions in property derived from specified unlawful activity, a Plaintiff must show that the Defendant "*knowingly* engage[d] in or attempte[d] to engage in a monetary transaction in

criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957 (emphasis added).

Plaintiffs alleged, generally, that "**Defendant Allen** committed fraud to lull Plaintiffs into investing millions of dollars into The Cheetah Fund L.P., which **he** and his wife then diverted to purchase expensive and luxurious personal property and real estate to their own, personal benefit. Mrs. Tarkenton-Allen knew that these funds were being unlawfully diverted by her husband, and knowingly spent these funds in interstate commerce via transactions that exceeded $10,000." (Emphasis supplied) Dkt. 1 at at ¶ 125-126. However, Plaintiffs did not allege any facts that support the notion that it is plausible (rather than merely conceivable) that Melissa knew that the funds she and her children relied on were ill-gotten. Plaintiffs did not allege any facts to show that Melissa had any role in the relevant businesses of this case as either an owner or an employee. Plaintiffs did not allege any facts to show that Melissa offered any Plaintiff investment advice. Over and over, Plaintiffs accused Melissa of knowing about her husband's alleged fraud and purposely concealing the alleged fraudulent scheme from Plaintiffs. Yet, the first time Melissa appeared in Plaintiffs' story is *after* Craig allegedly stole Plaintiffs' money. Plaintiffs did not allege any facts that show Melissa had any knowledge that the funds her husband received were in any way ill-gotten.

Further, Plaintiffs refer to a "lavish and extravagant lifestyle" that Craig and Melissa allegedly lived and the "purchase [of] expensive and luxurious personal property and real estate" in excess of $10,000 with Plaintiffs' money as required pursuant to 18 U.S.C. § 1957. Dkt. 1 at ¶ 1, 3, 125. They did not, however, point to any transaction in particular to support their claim. *See e.g., Prevectus Health Strategies v. Bryson*, 2019 U.S. Dist. LEXIS 240428, *16 (N.D. Ga.)(defendant's motion to dismiss granted as to 18 U.S.C. §1957 claim for failure to show that the transaction involved criminally derived property). Merely parroting the elements of a claim is not enough to move an allegation from conceivable to plausible. *Twombly*, 550 U.S. at 555. Therefore, Plaintiffs failed to set forth plausible facts to state a claim for engaging in monetary transactions in property derived from specified unlawful activity pursuant to 18 U.S.C. § 1957 as a predicate act for a civil RICO allegation pursuant to 18 U.S.C. § 1961(1)(B).

## 2. Plaintiffs did not set forth plausible facts to show that Melissa participated in fraudulent concealment.

To state a claim for fraudulent concealment, a plaintiff must prove the same elements of a fraud claim. *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1296 (N.D. Ga. 2018). "'Under Georgia law, the tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages.'" *Id*. (quoting *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368

(N.D. Ga. 2013) (punctuations omitted)). "In the context of fraudulent-concealment claims, the scienter element requires that the alleged defrauder had actual, not merely constructive, knowledge of the fact concealed." *Id*. (citation omitted). "'In addition, only the suppression of a material fact which a party is under obligation to communicate can support such a claim.'" *Id*. (quoting O.C.G.A. § 23-2-53) (punctuation omitted). And, of course, after-the-fact communications could not possibly have induced reliance.

Pursuant to Fed. R. Civ. P. 9(b), claims of fraud are held to a higher pleading standard, requiring that "a party must state with particularity the circumstances constituting fraud." *McWhorter*, 2022 U.S. Dist. LEXIS at *6. To satisfy Rule 9(b), a plaintiff must identify: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff; and (4) what the defendants gained by the alleged fraud." *Id*. at *7 (punctuation omitted).

Plaintiffs alleged that "[d]uring Plaintiffs' investigation relating to Defendants' fraud, Mrs. Tarkenton-Allen made false and misleading statements for the purposes of concealing her husband's fraud. Mrs. Tarkenton-Allen also made false statements of fact for the purposes of concealing her own involvement in the fraudulent scheme and/or her personal use of ill-gotten gains. Mrs. Tarkenton-Allen

also assisted Defendant Allen conceal his fraud by, among other things, (1) propagating to Plaintiffs the story that her husband need to attend a rehabilitation program; (2) making affirmative statements that 'this is not a Ponzi scheme' and 'we fired Eliot Davis'; (3) emptying our Defendant Allen's office of any documents that evidenced the fraudulent scheme; and (4) refusing to provide documents to which Plaintiff were legally entitled, like banking records." Dkt. 1 at ¶ 175-177. For the following reasons, Plaintiffs did not set forth plausible facts to show that Melissa participated in fraudulent concealment.

> **a. Plaintiffs failed to state a claim for fraudulent concealment when they alleged that Melissa "propagat[ed] to Plaintiffs the story that her husband need[ed] to attend a rehabilitation program."**

Plaintiffs asserted that Melissa "propogat[ed] to Plaintiffs the story that her husband need[ed] to attend a rehabilitation program." Dkt. 1 at ¶ 177. Plaintiffs did not allege any facts or law that establish that Melissa owed any Plaintiff a duty to disclose. Plaintiffs did not allege any facts to show that Melissa had actual knowledge that her husband did not go to a rehabilitation program. Plaintiffs did not allege any facts to show that Melissa intentionally induced Plaintiffs to act or refrain from acting in reliance on her alleged misrepresentation. Plaintiffs did not allege any reliance on the after-the-fact communication or harm flowing from any such reliance. By the time Melissa made this statement, Craig had already allegedly harmed Plaintiffs and Plaintiffs did not allege any facts that show that Melissa had

actual knowledge her husband had run off with Plaintiffs' money. Therefore, Plaintiffs failed to state a claim for fraudulent concealment because they did not allege plausible facts that satisfy the elements of such a claim.

Plaintiffs also failed to plead Melissa's alleged fraud with particularity in that they alleged no specific instance. Plaintiffs did not identify when or where Melissa "propogat[ed] to Plaintiffs the story that her husband need[ed] to attend a rehabilitation program." Dkt. 1 at ¶ 177. Plaintiffs give no context for this alleged statement. Plaintiffs did not allege any facts to show the content and manner in which this statement misled Plaintiffs. Plaintiffs did not allege any facts to show what the defendants gained by the alleged fraud since Craig had already run off with Plaintiffs' money by the time Plaintiff Kittrell had this conversation with Melissa. Therefore, Plaintiffs failed to state a claim for fraudulent concealment when they alleged that Melissa fraudulently concealed Craig's whereabouts. *See e.g., Goodson v. Boston Sci. Corp.*, 2011 U.S. Dist. LEXIS 149193, *15 (N.D. Ga.)(defendant's motion to dismiss fraudulent concealment claim was granted when pn laintiff failed to specifically identify the alleged fraudulent statements in accordance with the heightened pleading requirement of Fed. R. Civ. P. Rule 9(b)).

        **b. Plaintiffs failed to state a claim for fraudulent concealment when they alleged that Melissa "ma[de] affirmative statements that 'this is not a Ponzi scheme' and 'we fired Eliot Davis.'"**

Plaintiffs asserted that Melissa "ma[de] affirmative statements that 'this is not a Ponzi scheme' and 'we fired Eliot Davis.'" Dkt. 1 at ¶ 177. Plaintiffs do not even attempt to explain how Melissa's two alleged disclosures concealed information. Plaintiffs also do not allege or attempt to explain how or why Melissa had any duty to disclose information.  Regarding "this is not a Ponzi scheme," Plaintiffs did not assert any facts to show that Melissa had actual knowledge that her husband was involved in a Ponzi scheme. Regarding "we fired Eliot Davis," it is unclear how this disclosure can be construed as an attempt to conceal anything. The allegation does not, however, show that Melissa was plausibly involved with the alleged fraud. Plaintiffs failed to allege any facts to show that Melissa intended to induce Plaintiffs to act or refrain from acting because they did not show that she had actual knowledge of her husband's fraudulent scheme in the first place. Plaintiffs failed to allege any facts that show justifiable reliance on or harm flowing from the after-the fact disclosures.

Plaintiffs also failed to plead Melissa's alleged fraudulent concealment with particularity. Plaintiffs failed to identify the content and manner in which these statements misled them and what the defendants gained by the alleged fraud. By the time Melissa asserted these statements, her husband had already allegedly completed the alleged fraud and absconded with Plaintiffs' money. Because Plaintiffs failed to plead this claim with particularity, they failed to state a claim for fraudulent

concealment when they alleged that Melissa "ma[de] affirmative statements that 'this is not a Ponzi scheme' and 'we fired Eliot Davis.'"

> ### c. Plaintiffs failed to state a claim for fraudulent concealment when they alleged that Melissa emptied Defendant Allen's office of any documents that evidenced the fraudulent scheme.

Plaintiffs asserted that Melissa "empt[ied] our (sic) Defendant Allen's office of any documents that evidenced the fraudulent scheme." Dkt. 1 at ¶ 177. Plaintiffs' claim for fraudulent concealment fails because Plaintiffs alleged no facts showing that, Melissa or anyone else emptied the office, what was emptied, when the office was emptied or that Melissa was under any duty not to empty the office. Worse, Plaintiffs' empty "emptied the office" allegation is contradicted by their own admission that when confronted by Kittrell with no advance warning, Melissa offered him unlimited and unfettered access to Craig's home office. (Complaint at Para. 76.) Plaintiffs offered no reason why Melissa could not move things in her own home (if she did) nor do they allege that they ever asked if anything had been moved or emptied. Plaintiffs did not allege that they asked or that Melissa denied them access to any allegedly "emptied" information. Again, Plaintiffs do not allege with any specificity that Melissa possessed superior information, that she was under any duty to disclose, or that she actually denied Plaintiffs access to information. On the contrary, Plaintiffs expressly allege that Melissa offered Plaintiffs unlimited access. They did not allege or set forth any facts to show that Melissa was an owner

of the Fund, an employee of the Fund, or that she gave investment advice to Plaintiffs such that a legal duty was created between the parties. Again, Plaintiffs did not allege any facts to support the claim that Melissa had actual knowledge that her husband was allegedly defrauding Plaintiffs.

### d. Plaintiffs failed to state a claim for fraudulent concealment when they alleged that Melissa refus[ed] to provide documents.

Plaintiffs asserted that Melissa "refus[ed] to provide documents to which Plaintiffs were legally entitled, like banking records." Dkt. 1 at ¶ 177. Plaintiffs' claim for fraudulent concealment fails because Plaintiffs did not show that Melissa owed Plaintiffs a duty to disclose. Plaintiffs did not show that they were legally entitled to banking records. Plaintiffs did not allege any facts to show that Melissa was an owner in the Fund, that she was an employee in the Fund, or that she, herself, had access to or control over any Fund banking records. In fact, it is clear that Plaintiffs know that Melissa is not involved in either C.M. Allen Capital Management Inc.[4] or the Fund because they chose not to include her in their claim for Breach of Fiduciary Duty.  Dkt. 1 at ¶ 179-182. Despite not having a duty to disclose, Melissa allowed Plaintiffs access to the documents they sought. Plaintiffs alleged that Melissa "refused to provide the [Plaintiffs] with access to any business or personal bank account statements." Dkt. 1 at ¶ 76.  However, in the same

---

[4] Craig wholly owns C.M. Allen Capital Management, Inc. which is the general partner of the Fund. Dkt. 1 at ¶ 2.

paragraph, Plaintiffs alleged that Melissa offered Plaintiff Kittrell unfettered access to search Craig Allen's home office. Dkt. 1 at ¶ 76. Therefore, plaintiffs failed to state a claim for fraudulent concealment when they alleged that Melissa refused to provide documents to Plaintiffs. *See e.g., Smith v. K-V Pharm. Co.*, 2009 U.S. Dist. LEXIS 138298, *10 (N.D. Ga.)(the Court granted defendants' motion to dismiss a fraudulent concealment claim because plaintiff failed to allege facts supporting her claim that defendants had a duty to disclose the information she alleged was concealed).

## <u>CONCLUSION</u>

This Court should dismiss Plaintiffs' claims against Melissa for failure to state a claim for which relief can be granted. Plaintiffs offered nothing more than speculation that Melissa knew Craig was engaged in some wrongdoing. They failed to set forth plausible facts to support any of the claims they alleged against Melissa. The Plaintiffs do not provide any evidence, or even allege, that Melissa held any position with the Fund, as officer, employee or member. Nor is there an allegation that she had any authority to exercise control over any Fund bank accounts or that she had any involvement in any "investment" made on behalf of any Plaintiff. This court should dismiss the Children from the case because Plaintiffs did not allege that they engaged in any wrongdoing. In the most literal sense, Plaintiffs failed to state any claim against the Children. This Court should dismiss the claims against Melissa

outright or, at a minimum, require Plaintiffs to plead specific facts sufficient to establish a viable claim.

Respectfully submitted this 22nd day of April, 2024.

**COHAN & LEVY**

*/s/ Louis R. Cohan*
Louis R. Cohan
GA Bar No. 173357
Erin Smith
GA Bar No. 854234
3340 Peachtree Rd.,
Tower Place 100, Suite 2570
Atlanta, GA 30326
T: 404.891.1770
lcohan@cohanlawgroup.com
*Attorneys for Defendants Melissa*
*Tarkenton-Allen, Mary Elaine*
*Allen, Teddy Allen, Charlotte*
*Allen, and Ben Allen*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NOTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| GRADY KITTRELL, MICHAEL GRIMES, CRAIG THOMAS, JAMEY SAXON IRA, SANDRA SAXON IRA, JAMEY SAXON, M. LEDBETTER TRUST, LAUREN ROBERTS, ZACH DAVIS, LISA JANE HADLEY, JILL HADLEY, SARAH BUFFTON, MICHAEL HAYDEL, ROBERT MOORE, ADRIANNE CHRISTY IRA, DR. KAHLID DIAB,<br><br>       Plaintiffs,<br><br>v.<br><br>CRAIG ALLEN, an individual, MELISSA TARKENTON-ALLEN, an individual, VIRGINIA VOHS, an individual, C.M. ALLEN CAPITAL MANAGEMENT, INC., a Georgia corporation, MARY ELAINE ALLEN, an individual, TEDDY ALLEN, an individual, CHARLOTTE ALLEN, an individual, and BEN ALLEN, an individual,<br><br>       Defendants. | Civil Action No.<br>1:24-cv-00786-SDG |

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing pleading complies with the font and point selections approved by the Court in Local Rule 5.1C. This pleading has been prepared in Times New Roman 14-point font.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 22nd day of April 2024 I electronically filed this MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6) OR ALTERNATIVELY FOR A MORE DEFINITE STATEMENT PURSUANT TO FED.R.CIV.P. 9(B) AND MEMORANDUM IN SUPPORT using the ECF system which will automatically send e-mail notification to all counsel of record signed up for the service.

Respectfully submitted this 22nd day of April 2024.

**COHAN & LEVY**

*/s/ Louis R. Cohan*

Louis R. Cohan
GA Bar No. 173357
Erin Smith
GA Bar No. 854234
3340 Peachtree Rd.,
Tower Place 100, Suite 2570
Atlanta, GA 30326
T: 404.891.1770
lcohan@cohanlawgroup.com
*Attorneys for Defendants Melissa Allen, Mary Elaine Allen, Teddy Allen, Charlotte Allen, and Ben Allen*