## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GRADY KITTRELL; MICHAEL GRIMES;
CRAIG THOMAS; JAMEY SAXON IRA;
SANDRA SAXON IRA; JAMEY SAXON;
M. LEDBETTER TRUST; LAUREN ROBERTS;
ZACH DAVIS; LISA JANE HADLEY; JILL
HADLEY; SARAH BUFFTON; MICHAEL
HAYDEL; ROBERT MOORE; ADRIANNE
CHRISTY IRA; and DR. KAHLID DIAB,

    Plaintiffs,

            v.

CRAIG ALLEN; MELISSA TARKENTON-
ALLEN; VIRGINIA VOHS; C.M. ALLEN
CAPITAL MANAGEMENT, INC.; MARY
ELAINE ALLEN; TEDDY ALLEN;
CHARLOTTE ALLEN; and BEN ALLEN,

    Defendants.

Civil Action No.
1:24-cv-00786-SDG

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' motion to amend their complaint [ECF 46], which is opposed by Defendants Melissa Tarkenton-Allen, Mary Elaine Allen, Teddy Allen, Charlotte Allen, and Ben Allen. For the following reasons, Plaintiffs' motion to amend is **GRANTED IN PART** and **DENIED IN PART**, such that Plaintiffs may proceed on their Racketeer Influenced and Corrupt Organizations Act (RICO) claim against Melissa Tarkenton-Allen, and on their unjust enrichment claim against Mary Elaine, Teddy, Charlotte, and Ben Allen.

# I.    BACKGROUND

The opposing Defendants for purposes of this Motion are the wife (Melissa)[1]

and children (Mary Elaine, Teddy, Charlotte, and Ben, collectively Children)[2] of

Defendant Craig Allen, who recently pled guilty to securities fraud in a related

criminal case.[3] Plaintiffs allege that Craig's investment firm—the Cheetah Fund

L.P.[4]—was a Ponzi scheme[5] that defrauded Plaintiffs—the Cheetah Fund

investors[6]—of almost $10 million.[7] Plaintiffs have named Melissa and the Children

as Defendants alongside Craig and his asset management company:[8] Melissa for

---

[1]    ECF 47, ¶ 24. Plaintiffs at times spell Tarkenton-Allen's name as "Mellissa."

[2]    *Id.* ¶¶ 25–28.

[3]    ECF 65-1. Civil proceedings against Craig were stayed pending resolution of his criminal case. ECF 27, at 1. That case (No. 1:24-cr-00323-TWT-1) is now closed. However, for logistical efficiency, the Court will defer ruling on Plaintiffs' motion to lift stay [ECF 43] until Craig completes in-processing at his assigned detention facility.

[4]    ECF 47, ¶ 2.

[5]    A Ponzi scheme is "an investment swindle in which some early investors are paid off with money put up by later ones in order to encourage more and bigger risks." *Ponzi scheme*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/Ponzi scheme [https://perma.cc/S69M-7L5B] (last visited March 4, 2025).

[6]    ECF 47, ¶¶ 6–21.

[7]    *Id.* ¶ 173. Plaintiffs allege they invested "approximately $9,850,000." *Id.* ¶ 181.

[8]    *Id.* ¶ 22. The company, Defendant C.M. Allen Capital Management, Inc., is the general partner of the Cheetah Fund and is allegedly wholly owned and controlled by Craig.

allegedly collaborating in her husband's fraud,[9] and the Children for being recipients of their parents' allegedly ill-gotten gains.[10] Melissa and the Children moved to dismiss all claims against them under Federal Rule of Civil Procedure 12(b)(6),[11] on which motion the Court heard oral argument.[12] Following argument, and in response to the motion to dismiss, Plaintiffs moved for leave to amend their complaint under Federal Rule of Civil Procedure 15.[13] The proposed amendment brings claims against Melissa for RICO violations,[14] fraud,[15] and civil conspiracy to commit fraud,[16] and against the Children for unjust enrichment.[17] Melissa and the Children oppose the proposed amendment as futile.[18]

---

[9]   *Id.* ¶ 204.

[10]  *Id.* ¶ 5.

[11]  ECF 16.

[12]  ECF 44.

[13]  ECF 46. For purposes of this Order the operative complaint is the proposed amended complaint at ECF 47. Thus, Defendants' motion to dismiss the superseded complaint [ECF 16] is denied as moot.

[14]  ECF 47, at 30.

[15]  *Id.* at 40.

[16]  *Id.* at 45. This will be referred to as Plaintiffs' "conspiracy" claim.

[17]  *Id.* at 48.

[18]  ECF 49, at 2.

## II.    DISCUSSION

Though Rule 15 instructs courts to grant leave to amend "freely," Fed. R. Civ. P. 15(a)(2), "denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal" for failure to state a claim. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir 1985). A complaint in turn fails to state a claim if it does not allege facts that "plausibly" entitle the plaintiff to relief, *Ingram v. Kubik*, 30 F.4th 1241, 1255 (11th Cir. 2022): if its factual allegations, assumed to be true and viewed "in the light most favorable to the plaintiff," *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019), fail to raise a reasonable inference of the defendant's liability, *McCullough v. Finley*, 907 F.3d 1324, 1335 (11th Cir. 2018). The Court therefore grants Plaintiffs leave to amend only as to those claims that are plausibly alleged.

Melissa and the Children have asserted from the beginning that Plaintiffs' allegations, regardless of how they implicate Craig,[19] do not permit a reasonable inference of *their* liability.[20] According to them, this latest amendment[21] is more of the same: a groundless attempt to drag them into a business dispute that does not

---

[19]    ECF 7, at 3.

[20]    *Id.* at 5–6.

[21]    The proposed amendment would be Plaintiffs' second. Plaintiffs have already amended their complaint once, as a matter of course under Federal Rule of Civil Procedure 15(a)(1). ECF 14, at 1.

involve them and that they know nothing about.[22] It is true that the bulk of the allegations in the proposed amended complaint are about Craig: how he lured investors with empty promises of high returns,[23] reported false profits with forged documents,[24] misappropriated funds to bankroll a lavish lifestyle,[25] and pretended to check himself into an alcohol rehabilitation program to keep his creditors at bay.[26] The Court therefore agrees that Plaintiffs' allegations do not sufficiently implicate Melissa in Craig's actions to sustain state law claims against her for fraud and conspiracy. They do, however, state a claim against her under RICO premised on money laundering, and against the children for unjust enrichment.

### A.    The Proposed Amended Complaint States a Claim Against Melissa Under RICO.

The Court begins with RICO.[27] Enacted in 1970 to end the "predations of mobsters" and to "eradicat[e ]organized crime," *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 245 (1989), RICO is an expansive statute that imposes heavy criminal and civil penalties—which would here include treble damages and attorneys' fees, 18

---

[22]    ECF 49, at 2.

[23]    ECF 47, ¶¶ 40–41.

[24]    *Id.* ¶¶ 132, 138.

[25]    *Id.* ¶ 155.

[26]    *Id.* ¶¶ 62–63.

[27]    The Court's subject matter jurisdiction over this case is in part premised on the sufficiency of the RICO claim. *Id.* ¶ 31.

U.S.C. § 1964(c)—on persons who engage in a "pattern of racketeering activity," 18 U.S.C. § 1962. A "pattern of racketeering activity" in turn means "criminal conduct of a continuing nature" consisting of at least two distinct, predicate criminal acts. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020) (emphasis omitted). Melissa argues that the RICO claim fails because the proposed amended complaint does not sufficiently allege two qualifying predicate acts.[28]

"A plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Cisneros*, 972 F.3d at 1216. Potential predicate acts are listed in the statute and run the gamut from violent crimes and controlled substance offenses to various kinds of trafficking and fraud. 18 U.S.C. § 1961(1). Plaintiffs here accuse Melissa of the predicate acts of wire fraud, 18 U.S.C. § 1343,[29] and money laundering, 18 U.S.C. § 1957.[30] The Court finds the allegations in the proposed amended complaint against Melissa, assumed to be true, sufficient to state a RICO claim premised only on the latter.

### 1.    There Is No Probable Cause for Wire Fraud.

The criminal offense of wire fraud has two elements: that a person "(1) intentionally participate in a scheme [ ] to defraud another of money or

---

[28]    ECF 49, at 7.

[29]    ECF 47, at 34–35.

[30]    *Id.* at 37–38.

property and (2) use or cause the use of the [ ] wires[31] for the purpose of executing the scheme." *United States v. Watkins*, 42 F.4th 1278, 1282 (11th Cir. 2022). In the context of a civil RICO claim, the plaintiff must also show a "sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury" by satisfying the requirements of but-for and proximate causation. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 657 (2008). In addition, at the pleadings stage, allegations of wire fraud must be made "with particularity" under Federal Rule of Civil Procedure 9(b). Rule 9(b) is often satisfied by setting forth the who, what, when, where, why, and how of each allegedly fraudulent statement: who said it, precisely what was said, when and where it was said, why it was said, and how it misled the plaintiff. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).

Here, Plaintiffs have failed to show that Melissa is indictable for wire fraud because the proposed amended complaint contains no particularized allegation that Melissa misled Plaintiffs until *after* the alleged fraud was complete.[32] Plaintiffs do not identify any document that Melissa allegedly forged, or any email through which she allegedly disseminated fraudulent financial information to investors.

---

[31]   Wire communications include those over both phone, *United States v. Patterson*, 534 F.2d 1113, 1114 (5th Cir. 1976), and internet, *United States v. Barrington*, 648 F.3d 1178, 1183 (11th Cir. 2011).

[32]   ECF 49, at 9.

Plaintiffs do not identify a single statement made by Melissa while the Fund was soliciting investments between 2019 and 2022.[33] Rather, all of Melissa's alleged misstatements came in January 2023,[34] during Plaintiff Grady Kittrell's private investigation into Craig's business, and are limited to the following:

- an unprompted statement that the Fund was "not a Ponzi scheme,"[35] when in fact it was;[36]

- a statement that "we"—presumably meaning Melissa and Craig— had terminated the Fund's accounting firm because it was "too expensive,"[37] when in fact the accounting firm had terminated its relationship with the Fund "for various inconsistencies and a poor payment record";[38]

- statements repeating the false story that Craig was unavailable because he had checked himself into alcohol rehab,[39] when in fact he was at home hiding from his investors;[40] and

- a statement that Melissa was "not tech-savvy enough" to access her own online bank accounts, despite having admitted to paying bills online.[41]

---

[33]   ECF 47, ¶¶ 62, 65.

[34]   *Id.* ¶ 54.

[35]   *Id.* ¶ 71.

[36]   *Id.* ¶ 1.

[37]   *Id.* ¶ 84.

[38]   *Id.* ¶ 80.

[39]   *Id.* ¶¶ 74–75.

[40]   *Id.* ¶¶ 75, 78.

[41]   *Id.* ¶ 94.

Even assuming—though it is not explicitly alleged—that some of these statements involved use of the wires, there is no way to infer that these statements *caused* Plaintiffs to lose their investments, because they were all made after Plaintiffs' money had already been invested.

Plaintiffs nevertheless argue that Melissa can be guilty of wire fraud, even if she did not herself use the wires, if it can be shown that she *intentionally participated* in a "scheme or artifice to defraud." As a legal premise, this is correct. The Eleventh Circuit has repeatedly held that "a defendant may be convicted of wire fraud *without* personally committing each and every element of wire fraud, so long as the defendant knowingly and willingly joined the criminal scheme, and a co-schemer used the wires for the purpose of executing the scheme." *Watkins*, 42 F.4th at 1284 (emphasis added). In other words, Melissa can be liable under the wire fraud statute, not only for her own communications, but also for Craig's, so long as (1) those communications were made in furtherance of a fraudulent scheme and (2) Melissa knowingly and willingly joined Craig in that scheme.

The first requirement is here clearly met: the proposed amended complaint is replete with particularized allegations that Craig committed wire fraud in furtherance of a Ponzi scheme. Plaintiffs allege that he made false statements over

the phone[42] about the Fund's bookkeeping practices,[43] legal representation,[44] investment strategy,[45] and management structure[46] to induce others to invest.[47] Plaintiffs also allege that he electronically circulated forged financial documents[48] to assure investors that the Fund was generating profits[49]—even when it was not—to "delay[ ] detection" of his fraud.[50] *United States v. Evans*, 473 F.3d 1115, 1119–21 (11th Cir. 2006). These allegations give rise to probable cause that Craig used the wires to further a criminal scheme.

What is missing, however, are particularized allegations giving rise to probable cause that Melissa knowingly and willingly *joined* Craig in his scheme. Plaintiffs' allegations as to Melissa's participation in the Fund's activities are either

---

[42]   *Id.* ¶ 43.

[43]   *Id.* ¶ 40.

[44]   *Id.*

[45]   *Id.*

[46]   *Id.*

[47]   *Id.* ¶ 45.

[48]   *Id.* ¶ 3. The proposed amended complaint also alleges that Craig circulated forged documents through the mails. *Id.* Such allegations could support the inference that Craig—and by extension Melissa—committed the RICO predicate offense of mail fraud. *United States v. Bradley*, 644 F.3d 1213, 1238 (11th Cir. 2011) ("Mail and wire fraud are analytically identical save for the method of execution."); 18 U.S.C. § 1961(1) (listing mail fraud, 18 U.S.C. § 1341, as a RICO predicate offense).

[49]   ECF 47, ¶ 46.

[50]   *Id.* ¶¶ 59–65.

conclusory or circumstantial. The former are, of course, given no weight. It is not enough to allege that Melissa "actively participated in the conducts and affairs of [the Fund],"[51] and "was aware of and complicit in Defendant Allen's fraudulent actions and communications."[52] Rather, Melissa's active participation and complicity in Craig's scheme must be supported by specific allegations giving rise to probable cause that Melissa was her husband's co-schemer.

The proposed amended complaint contains no such allegations. Plaintiffs allege, as discussed above, that Melissa defended the Fund's legitimacy, lied about why the Fund's accountant was fired, hid Craig from angry investors, and tried to distance herself from her family's finances.[53] Plaintiffs further allege the following:

- Melissa told Kittrell that "the Fund had been liquidated into a cash holdings [sic.];"[54]

- Melissa gave Kittrell access to Craig's office in lieu of handing over relevant bank statements but, before Kittrell arrived, emptied the office of the Fund's books and records;[55] and

- Melissa and Craig had previously conspired to defraud Craig's father.[56]

---

[51] *Id.* ¶ 68.

[52] *Id.* ¶ 98.

[53] *Supra* notes 33-41 and accompanying text.

[54] ECF 47, ¶ 71.

[55] *Id.* ¶¶ 90–91.

[56] *Id.* ¶¶ 82, 101.

These allegations *do* show that Melissa knew the Fund's money "was not being invested as promised." *United States v. Ward*, 486 F.3d 1212, 1224 (11th Cir. 2007). They support the reasonable inference that Melissa had insight into the Fund's accounting irregularities, understood that those irregularities were consistent with the Fund being a Ponzi scheme, and actively undermined Plaintiffs' efforts to expose the Fund as such.

However, Plaintiffs' *post hoc* circumstantial allegations do *not* support the inference that Melissa was so "deeply enmeshed" in the Fund's operations as to be liable for wire fraud as Craig's co-schemer. *Id.* at 1225. The case law is instructive. In *United States v. Ward*, the Eleventh Circuit upheld a mail fraud[57] conviction in a Ponzi scheme case based on co-schemer liability, where the defendant helped incorporate a fraudulent investment fund, served as its general manager, conducted business on its behalf, solicited investors, forged documents, signed letters, and gambled with his clients' money. *Id.* at 1215–16. Similarly, in *United States v. Watkins*, the Eleventh Circuit upheld a wire fraud conviction based on co-schemer liability where the defendant served as the office manager and bookkeeper for a fraudulent investment fund and had discussed soliciting money

---

[57]   *Supra* note 48.

from investors under false pretenses for the purpose of paying personal expenses. 42 F.4th at 1283.

In both *Ward* and *Watkins*, there was a substantial factual basis to conclude that the co-schemer not only knew about the existence of a fraud but was intimately involved in its operation. Here, by contrast, there are no particularized facts tying Melissa to Craig's fraud at the time it was occurring: no allegation that she managed his investment fund, communicated with investors, prepared documents, or otherwise participated in perpetrating the Ponzi scheme. What the allegations show is not Melissa's participation in Craig's scheme but her knowledge of it—and for co-schemer liability, knowledge is not enough. The proposed amended complaint accordingly fails to state a RICO claim against Melissa premised on predicate acts of wire fraud.

### 2.    There Is Probable Cause for Money Laundering.

The lack of probable cause for wire fraud is not fatal to Plaintiffs' RICO claim, however, because Melissa is indictable for multiple predicate acts of money laundering. Money laundering under 18 U.S.C. § 1957—a crime officially known as "Engaging in monetary transactions in property derived from specified unlawful activity," 18 U.S.C. § 1957, and which Plaintiffs call "spending ill-gotten gains"[58]—occurs when a person "knowingly engages in a monetary transaction in

---

[58]    ECF 47, at 36.

criminally derived property of a value greater than $10,000," where the monetary transaction occurs "by, through, or to a financial institution," and the property is derived from a RICO predicate offense. 18 U.S.C. § 1957(a), (f). There is a *mens rea* requirement to § 1957—the defendant's conduct must be "knowing"—but the requirement is somewhat relaxed: The defendant must have known that the property in question was "criminally derived," but need *not* have known that the property was derived from any particular crime. *United States v. Baker*, 19 F.3d 605, 614 (11th Cir. 1994) (citing 18 U.S.C. § 1957(c)).

Here, the proposed amended complaint alleges that Craig transferred money obtained by wire fraud into a bank account controlled by Melissa so that she could pay family expenses.[59] These expenses included over $422,000 in personal credit card bills; over $215,000 in private school tuition; over $101,000 in college tuition; over $177,000 on rent; over $15,000 on summer camps; over $430,000 in apparent gifts to family members; and over $145,000 in travel.[60] This establishes the likelihood that Melissa executed multiple, independent transactions through a financial institution involving sums of money greater than $10,000. Furthermore, as discussed above, the proposed amended complaint alleges enough circumstantial facts to satisfy the *mens rea* requirement: There is

---

[59]   *Id.* ¶¶ 92, 94.

[60]   *Id.* ¶ 104.

reason to believe that Melissa knew the financial proceeds from her husband's investments to be fraudulently derived, even if she herself did not participate in that fraud. Plaintiffs have therefore shown probable cause that Melissa committed multiple predicate acts of money laundering, on which basis they are granted leave to amend their RICO claim.

## B.    The Proposed Amended Complaint Fails to State a Claim Against Melissa for Both Fraud and Conspiracy.

Plaintiffs also bring state law claims against Melissa for both fraud and conspiracy. The Court's analysis of these claims mirrors its analysis of Plaintiffs' wire fraud claim: The proposed amended complaint plausibly alleges neither that Melissa committed a fraud of her own, nor that she conspired with Craig in his.

The proposed amended complaint's fraud claim[61] has five elements: "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Najarian Cap., LLC v. Clark*, 357 Ga. App. 685, 688–89 (2020). This claim fails as a

---

[61]    Plaintiffs purport to sue for both fraud in the inducement and fraud in the execution (also known as fraud in the factum). The latter is "the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents." *Bellamy v. Resol. Tr. Corp.*, 266 Ga. 630, 631 (1996). But Plaintiffs here allege, not that they signed investment contracts they did not intend to sign, but that their signatures to the contracts were induced by representations that Craig knew were false. Such allegations can only give rise to a claim for fraud in the inducement. *Straus v. Renasant Bank*, 326 Ga. App. 271, 275 (2014) (quoting *Bank of the Ozarks v. Khan*, 903 F. Supp. 2d 1370, 1378 (N.D. Ga. 2012)).

matter of law with respect to Melissa because Plaintiffs' allegations do not permit the reasonable inference that Plaintiffs justifiably relied on Melissa's alleged misrepresentations. Plaintiffs do not point to any action taken by any party in reliance on anything Melissa said and, even if they had, Kittrell's repeated allegation that he found Melissa's behavior "suspicious"[62] leaves little room to conclude that reliance on Melissa's representations was plausibly justifiable.

Neither does the proposed amended complaint allege a viable claim for conspiracy. "In order to prove conspiracy to commit fraud, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." *Howard v. Sellers & Warren, P.C.*, 309 Ga. App. 302, 306 (2011).[63] Plaintiffs have failed to do so. They have, indisputably, plausibly alleged an underlying tort: that Craig committed fraud in the inducement by making false representations about the Fund, knowing that they were false, intending to induce Plaintiffs to invest, on which Plaintiffs justifiably relied, to their financial detriment. However, Plaintiffs have failed to provide a factual basis from which to reasonably infer Melissa acted *in concert* with Craig to execute a Ponzi scheme. There are no allegations that "evince some earlier tacit understanding [between Melissa and

---

[62]    ECF 47, ¶¶ 76, 87.

[63]    While Plaintiffs' conspiracy claim is not coextensive with their wire fraud claim, *United States v. Ward*, 486 F.3d 1212, 1223 (11th Cir. 2007), the Court's analyses of the two claims are similar.

Craig] to accomplish an unlawful design." *Zions First Nat'l Bank v. Macke*, 316 Ga. App. 744, 751–52 (2012). Plaintiffs are thus denied leave to amend for purposes of their state law claims against Melissa.

### C. Plaintiffs Are Granted Leave to Amend Their Claim Against the Children for Unjust Enrichment.

The Children are being sued only as "relief defendants"—that is, only in their capacity as a source of money damages.[64] The Children are not being sued because they have committed some wrong for which they should be held liable. Rather, they are being sued because they allegedly received money traceable to the Fund from their parents—in the form of gourmet meals, designer clothes, private-school educations, exotic family vacations, and other luxurious amenities—that Plaintiffs want back. The vehicle through which Plaintiffs are seeking relief is a claim for unjust enrichment, which can be brought "when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *Cochran v. Ogletree*, 244 Ga. App. 537, 538 (2000). Here, Plaintiffs argue, the Children have greatly benefitted from their parents' "ill-gotten gains," which in fairness the Children should be required to pay back.[65]

---

[64]   ECF 47, ¶¶ 25–28.

[65]   *Id.* ¶ 224. Unjust enrichment only applies when, as here, "there is no legal contract." *Cochran*, 244 Ga. App. at 538.

There is legal support for the idea that money disbursed by a Ponzi schemer can be clawed back through a claim for unjust enrichment—and the Court did not need to look very far to find it. In *Hill for Credit Nation Capital, LLC v. Duscio*, a recent case from this District, a private plaintiff seeking to claw back disbursed Ponzi scheme funds was ruled to have stated a claim for unjust enrichment. 292 F. Supp. 3d 1370 (N.D. Ga. 2018). *Hill* held that the elements of a common-law unjust enrichment claim were satisfied by allegations that a defendant received payouts from a Ponzi scheme in excess of what he invested, that the money for the payouts came from defrauded investors, and that "equity and good conscience" demanded that the money be repaid. *Id.* at 1378.

*Hill* is consistent with the fundamental principle that it is well within this Court's equitable powers to order disgorgement as an equitable remedy for financial fraud. *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989) (holding that disgorgement is one of "the inherent equitable powers of the District Court [ ] available for the proper and complete exercise of [its] jurisdiction" under the securities laws (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946))).[66] This principle can be seen in *SEC v. Calvo*, where the Eleventh Circuit upheld a $2.5 million disgorgement award for Exchange Act violations. 378 F.3d

---

[66] *First City* affirmed district courts' authority to order disgorgement regardless of explicit statutory authorization. 890 F.2d at 1230.

1211, 1217 (11th Cir. 2004). It can be seen in *Commodity Futures Trading Commission v. Amerman*, where the Eleventh Circuit upheld a $1.4 million disgorgement award in a Ponzi scheme case, including over $500,000 from relief defendants. 645 F. App'x 938, 941 (11th Cir. 2016). And it can be seen in *SE. v. Johnson*, where the Eleventh Circuit upheld a $1.2 million disgorgement award against a fraudster's mother, named solely as a relief defendant. 436 F. App'x 939, 940 (11th Cir. 2011); *see also Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995) (upholding disgorgement awards against relief defendants including the Ponzi schemer's ex-wife). The Court does not doubt that it could order the Children to disgorge Fund money—*if* equity and good conscience so required.

It is one thing to say the Children benefitted from their parents' fraud, as Plaintiffs have certainly alleged in sufficient detail. It is another thing to say that justice requires the Children to pay those benefits back. What the Children allegedly received from their parents seem to be the kind of "benefits" one would expect a child to receive from a parent: food, housing, clothing, an education, an allowance, a car to drive, and vacation with the family.[67] These are, by their nature, household expenses that parents routinely incur in their capacity as parents. There is—at least so far—no allegation that Craig and Melissa are hiding assets in the

---

[67]    ECF 47, ¶¶ 104, 106–07, 225.

Children's names or, for that matter, that the Children own any assets at all. There is little basis to infer that the Children knew they were enjoying the spoils of stolen money.[68] What Plaintiffs seem to be alleging is, at its core, that the Children were financially dependent on their parents at the same time that their parents were committing fraud. That seems to be a rather tenuous basis for equitable relief.

Perhaps realizing this, Plaintiffs have purported to voluntarily dismiss their claims without prejudice against "any minor child who is named as a defendant."[69] This laudable gesture is legally ineffective for two reasons. First, it is unclear whether Plaintiffs meant to dismiss those Children who were minors during the relevant time period, or only those who remain minors today. Second, the Court does not know the Children's ages, and thus cannot determine which of them Plaintiffs meant to dismiss. Nevertheless, given the difficulty of ruling as a matter of law on the equities given the procedural posture[70]—where all reasonable inferences must be drawn in Plaintiffs' favor—the Court will grant Plaintiffs leave

---

[68]   The Court is skeptical of the idea that a child should reasonably be expected to know that his parents are fraudsters based only on the fact of their sudden wealth. *See* ECF 52, at 5.

[69]   ECF 56, at 2.

[70]   Notably, the Children do not ask the Court to balance the equities on the pleadings as a matter of law. *See* ECF 52.

to amend their complaint a third and final time for the limited purpose of identifying which of the Children remain in the case.

## III.    CONCLUSION

Plaintiffs' motion to amend their complaint [ECF 46] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs may proceed against Melissa under RICO for predicate acts of money laundering, and against whomever of the Children they name in their third amended complaint. Melissa and the Children's motion to dismiss [ECF 16] is **DENIED as moot**.[71]

Plaintiffs' motion to lift stay [ECF 43] is **DEFERRED**.[72] Plaintiffs are invited to periodically monitor the federal Bureau of Prisons website and notify the Court when Defendant Craig Allen is placed at a non-transitional detention facility where he can more reliably receive service papers and communications from the Court.

Plaintiffs are **ORDERED** to file a third amended complaint consistent with this Order within 14 days. The Defendants named in Plaintiffs' third amended complaint are **ORDERED** to file their answer within 21 days of the filing of the third amended complaint. The parties are **ORDERED** to file their Joint

---

[71]   *Supra* note 13.

[72]   *Supra* note 3.

Preliminary Report and Discovery Plan within 28 days after all named Defendants

answer the third amended complaint.[73]

      **SO ORDERED** this 4th day of March, 2025.

                                            Steven D. Grimberg
                                 United States District Judge

---

[73] In light of the continued stay of his case, the instructions in this paragraph do not apply to Defendant Craig Allen until further order.