**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

GRADY KITTRELL, *et al.*,
Plaintiffs,
v.
CRAIG ALLEN, *et al.*,
Defendants.

Civil Action No.
1:24-cv-00786-SDG

## OPINION AND ORDER

This matter is before the Court on various motions filed by the parties. Most notably, Defendants Melissa Tarkenton-Allen, Mary Elaine Allen, Teddy Allen, Charlotte Allen, and Ben Allen (hereinafter, Melissa and the Children) move for summary judgment [ECF 167] as to Plaintiffs' claims against them on the ground that Plaintiffs lack standing to bring these claims. Because Melissa and the Children are correct, their motion for summary judgment is **GRANTED** in this regard. For the reasons explained below, however, Melissa and the Children's affirmative motion for judgment on their defamation counterclaim is **DENIED**. As a result, the following motions are **DENIED as moot**:

- Plaintiffs' motion for leave to file sur-reply [ECF 187];
- Plaintiffs' motion to compel [ECF 190];
- Plaintiffs' consent motion [ECF 191];
- Defendants' motion to exclude the expert affidavit of Karen Fortune [ECF 183];

- Defendants' motion to exclude the expert affidavit of Grady Kittrell [ECF 185]; and
- Defendants' motion to exclude evidence [ECF 184].

Plaintiffs also lack standing to bring certain claims against Defendant Craig Allen directly, and their civil conspiracy cause of action fails to state a claim, so their motion for default judgment against him [ECF 164] is **GRANTED IN PART** and **DENIED IN PART**.

## I. INTRODUCTION

### A. Factual Background

The material facts proffered by the parties are scant and provide very little helpful context.[1] At its core, this case arises from allegations of misconduct related to an investment firm known as The Cheetah Fund L.P.[2] Plaintiffs are limited partners who invested in the Fund.[3] Defendant Craig Allen managed the Fund, while his asset management company, C.M. Allen Capital Management, Inc.

1 ECFs 168-2, 182-1. Defendants submitted a "statement of undisputed material facts" and a "reply statement of undisputed material facts." *Id*. Together, these submissions contain only 16 facts, with a rudimentary smattering of information devoid of any narrative structure. *Id*. Plaintiffs' responses to these submissions fare no better and largely contain rote denials that reflect a limited attempt by Plaintiffs to defend their arguments. ECF 180-3.

2 ECF 66, at 2.

3 *Id*. By name, Plaintiffs are Grady Kittrell, Michael Grimes, Craig Thomas, Jamey Saxon IRA, Sandra Saxon IRA, Jamey Saxon, M. Ledbetter Trust, Lauren Roberts, Zach Davis, Lisa Jane Hadley, Jill Hadley, Sarah Buffton, Michael Haydel, Robert Moore, Adrianne Christy IRA, and Dr. Kahlid Diab.

(CMA Capital), served as the Fund's general partner.[4] Plaintiffs allege that Craig, who was ultimately prosecuted in a related criminal case, operated The Cheetah Fund as a "Ponzi" scheme and defrauded Plaintiffs out of nearly $10 million.[5] Plaintiffs bring claims against Craig premised on his mismanagement of the Fund and his misrepresentations to Plaintiffs about it.[6] Plaintiffs also bring claims against Melissa and the Children based on allegations that Melissa knowingly spent the money Craig wrongfully obtained through his scheme and that the Children benefitted from their parents' lavish spending of that money.[7]

**B. Procedural Background**

On March 18, 2025, Plaintiffs filed a third amended complaint (TAC) asserting the following claims against Craig:

- Violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act;
- Violation of Section 10(b) of the Exchange Act and Rule 10b-5;
- Violation of the Georgia Uniform Securities Act of 2008;
- Fraudulent inducement and fraud in the execution;
- Fraudulent misrepresentation;
- Conspiracy to commit fraud;

---

4 *Id.*

5 *Id.*

6 ECF 68, ¶¶ 116–222.

7 *Id.* ¶¶ 151–158, 223–229.

- Breach of fiduciary duty; and
- Breach of contract.[8]

Plaintiffs also brought a RICO claim against Melissa and an unjust enrichment claim against the Children.[9] On December 5, Plaintiffs filed a motion for default judgment against Craig after he failed to answer the TAC and the Court instructed them to seek entry of default.[10] On December 10, Melissa and the Children moved for summary judgment.[11]

Since then, the parties have also submitted numerous vexatious motions that seek to exclude expert testimony and evidence, and to compel third parties to produce evidence.[12] Specifically, Melissa and the Children moved to exclude the testimony of two of Plaintiffs' witnesses, Karen Fortune and Grady Kittrell, and to exclude certain evidence.[13] For their part, Plaintiffs move to compel the U.S. Department of Justice to produce evidence, for a court order to release certain discovery documents, and for leave to file a sur-reply to Melissa and the Children's

---

8 *Id*. ¶¶ 116–222. Plaintiffs also brought RICO, Georgia Uniform Securities Act, conspiracy, breach of fiduciary duty, and breach of contract claims against The Cheetah Fund's general partner, CMA Capital. *Id*.

9 *Id*. ¶¶ 151–158, 223–229.

10 ECFs 124, 164.

11 ECF 167.

12 ECFs 183–185, 187, 189–198.

13 ECFs 183, 184, 185.

summary judgment motion.[14] The parties' motions have been fully briefed, and thus, are ripe for resolution.

## II. DISCUSSION

Melissa and the Children move for summary judgment on Plaintiffs' claims against them, and affirmatively in support of their defamation counterclaim.[15] Melissa and the Children are entitled to summary judgment on Plaintiffs' RICO and unjust enrichment claims because Plaintiffs lack standing to bring these claims in a direct action. However, Melissa and the Children are not entitled to summary judgment on their defamation counterclaim.

In turn, Plaintiffs move for default judgment as to their numerous claims against Craig.[16] But they do not have standing to press their breach of fiduciary duty and breach of contract claims against Craig in a direct action. Moreover, Plaintiffs have failed to state a civil conspiracy claim against Craig. However, Plaintiffs are entitled to judgment against Craig on their claims for violation of the RICO Act, violation of Section 10(b) of the Exchange Act and Rule 10b-5, violation of the Georgia Uniform Securities Act of 2008, fraudulent inducement, and fraudulent misrepresentation.

---

[14] ECFs 187, 190, 191.

[15] ECF 167.

[16] ECF 164.

### A. Plaintiffs lack standing to bring their RICO claim against Melissa, their unjust enrichment claim against the Children, or their breach of fiduciary duty and breach of contract claims against Craig.

First, the Court addresses Plaintiffs' standing as to all of their claims. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Standing can be evaluated at any stage during a litigation, including at summary judgment. *Russell v. United States*, 845 F. App'x 818, 821 n.3 (11th Cir. 2021). The Supreme Court has held that, to show standing, a plaintiff must demonstrate: (1) an actual or imminent injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by the court. *Lujan*, 504 U.S. at 560–61. Here, Plaintiffs arguably have demonstrated Article III standing: They seek to recover damages for the economic injuries they suffered because of Defendants' alleged misconduct.[17]

Beyond constitutional standing, however, "[a] closer question" exists as to Plaintiffs' ability to bring their claims in a direct, rather than derivative, action. *Shehee v. Lynch*, 2024 WL 6912825, at *4 (N.D. Ga. Sept. 26, 2024). This question, which is central to the parties' dispute, "is unrelated to constitutional standing" and "is an issue of state law." *Id.; see Deal v. Tugalo Gas Co., Inc.*, 991 F.3d 1313, 1322–23 (11th Cir. 2021) ("While courts may use the word 'standing' in explaining

---

[17] ECF 68.

whether a shareholder-plaintiff can bring a direct claim against a corporation, they do so not in the Article III sense, but rather in an altogether different corporate-law sense.").

Plaintiffs are seeking recovery for harm sustained in connection with their investments as limited partners in The Cheetah Fund.[18] Generally, claims by members of a corporation or limited partnership can be brought against the entity in either direct actions or derivative actions. *See Murray v. Lexington Park of Fulton Cnty. Cmty. Ass'n, Inc.*, 372 Ga. App. 269, 271 (2024). This is true for shareholders as well as for limited partners like Plaintiffs. *See Hendry v. Wells*, 286 Ga. App. 774, 784–85 (2007); *see also Lenz v. Associated Inns & Rests. Co. of Am.*, 833 F. Supp. 362, 381 (S.D.N.Y. 1993) ("[I]t is well established that where a corporation suffers loss the stockholder has a derivative cause of action on behalf of the corporation to recover the loss for the benefit of the corporation. This reasoning applies with equal authority to limited partnerships.") (citation modified); *Strain v. Seven Hills Assocs.*, 429 N.Y.S.2d 424, 432 (1980) ("By logical extension it appears that a limited partner's power to vindicate a wrong done to the limited partnership and to enforce redress for the loss or diminution in value of his interest is no greater than that of a stockholder of a corporation.").

---

18 *Id.*

Derivative and direct actions serve different purposes. In derivative actions, a shareholder (or limited partner) brings claims on behalf of a corporation for harm done only to the corporation, and any recoveries are paid to the corporation itself rather than to the individual shareholder (or limited partner). *See Barnett v. Fullard*, 306 Ga. App. 148, 151 (2010). On the other hand, in direct actions, a shareholder (or limited partner) brings claims on his own behalf for harm done to him individually, with damages paid directly to him. *See id.* at 151–52.

Plaintiffs, all limited partners in The Cheetah Fund, brought their claims against Defendants in a direct action.[19] Generally, a limited partner seeking recovery of "misappropriated corporate funds" may only bring those claims in a derivative action. *See Thomas v. Dickson*, 250 Ga. 772, 774 (1983). Georgia courts have carved out two exceptions to this general rule.

First, a limited partner may maintain a direct action if he alleges a "special injury" that is "separate and distinct" from any injury suffered by the corporation or other limited partners, or an injury implicating a contractual right independent from any right of the corporation. *See Grace Bros., v. Farley Indus., Inc.*, 264 Ga. 817, 819 (1994) (quoting *Phoenix Airline Servs., Inc. v. Metro Airlines, Inc.*, 260 Ga. 584, 585 (1990)). In determining whether a direct claim has been properly asserted,

---

19 *Id.*

courts look to whether the plaintiff limited partner is similarly situated to other limited partners, has suffered the same injury, or can be made whole by a recovery to the corporation itself. *See APA Excelsior III, L.P. v. Windley*, 329 F. Supp. 2d 1328, 1360 (N.D. Ga. 2004) (quoting *Citibank, N.A. v. Data Lease Fin. Corp.*, 828 F.2d 686, 693 (11th Cir. 1987)). Georgia law does not allow a claim to be brought directly by a limited partner that suffers only "indirect" damage because of harm done to the partnership itself. *Hendry*, 286 Ga. App. at 784 ("When a limited partner alleges wrongs to the limited partnership that indirectly damaged a limited partner by rendering his contribution or interest in the limited partnership valueless, the limited partner is required to bring his claim derivatively on behalf of the partnership.") (citation omitted).

Second, Georgia courts have carved out an exception for closely held corporations. Even without a showing of a special injury, a limited partner may bring his claims in a direct action if "the corporation is closely held and 'the circumstances show that the reasons for the general rule requiring a derivative suit do not apply.'" *Barnett*, 306 Ga. App. at 153 (quoting *Sw. Health & Wellness, L.L.C. v. Work*, 282 Ga. App. 619, 626 (2006)). In this context, the reasons for requiring a derivative suit include:

> (1) to prevent multiple suits by shareholders; (2) to protect corporate creditors by ensuring that the recovery goes to the corporation; (3) to protect the interest of all the shareholders by ensuring that the

> recovery goes to the corporation, rather than allowing recovery by one or a few shareholders to the prejudice of others; and (4) to adequately compensate injured shareholders by increasing their share values. *Id.*

If even one of these reasons is applicable, the limited partner cannot bring his claims in a direct action. *See Callicott v. Scott*, 357 Ga. App. 780, 788 (2020).

As explained below, Plaintiffs have failed to demonstrate that their RICO claim against Melissa and their unjust enrichment claim against the Children meet either of these two exceptions that would allow them to pursue these claims in a direct action. Because Plaintiffs have no standing to sue directly, Melissa and the Children are entitled to summary judgment on the claims against them.

Moreover, Plaintiffs have failed to demonstrate standing to bring breach of fiduciary duty and breach of contract claims against Craig directly. However, Plaintiffs do have standing to press their other claims against Craig—for RICO violations, federal and state securities violations, fraudulent inducement, fraudulent misrepresentation, and conspiracy—in a direct action.

**1. Exception One: Whether Plaintiffs Suffered a Special Injury**

Plaintiffs predicate their RICO claim against Melissa solely on the "spending [of] ill-gotten gains," and allege that she personally benefitted from Craig's siphoning of investor funds from The Cheetah Fund, spending tens of thousands

of dollars on luxury items and real estate for herself and her family.[20] Although Plaintiffs claim that "Defendants" "conducted the affairs" of The Cheetah Fund through a pattern of racketeering activity,[21] the TAC does not contain any factual allegations suggesting that Melissa (or the Children) had any involvement in the operation of the Fund.[22] Nor do Plaintiffs allege that Melissa worked in concert with Craig to defraud Plaintiffs.[23]

As to the Children, Plaintiffs allege that Mary Elaine, Teddy, Charlotte, and Ben were unjustly enriched by the misconduct of their parents by receiving "expensive trips, luxury goods, private school funds, college funds, and vehicle leases" financed by the misappropriated money.[24] Finally, Plaintiffs' claims for

---

20 *Id.* ¶¶ 151–158.

21 *Id.* ¶ 118.

22 Plaintiffs' RICO cause of action is premised solely on 18 U.S.C. § 1962(c), which prohibits any person associated with a RICO enterprise from "conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." The Supreme Court has held that the word "conduct" here "requires an element of direction" and the word "participate" requires "some part in that direction." *Reves v. Ernst & Young*, 507 U.S. 170, 178, 179 (1993); *see also id.* at 183 (concluding that a person is not liable under § 1962(c) unless she "has participated in the operation or management of the enterprise itself").

23 *See generally* ECF 68.

24 *Id.* ¶¶ 223–229.

breach of fiduciary duty and breach of contract against Craig are solely premised on his alleged mismanagement of The Cheetah Fund's investment funds.[25]

Plaintiffs cite a number of cases in support of their argument that they have suffered a special injury "separate and apart from Fund" that qualifies them to bring their claims in a direct action.[26] In those cases, however, the plaintiffs were able to show that they belonged to a discrete subgroup of minority shareholders that suffered a personal harm or, at least, "a singular economic injury to minority interests alone." *Grace Bros.*, 264 Ga. at 819–20 ("That claim asserts an injury separate and distinct from any injury to the corporation or the majority shareholders because only the minority shareholders stood to receive $58 per share upon consummation of the merger agreement.") (citation omitted); *see also Argentum Int'l, LLC v. Woods*, 280 Ga. App. 440, 447 (2006) ("In this case, the equity-holding Plaintiffs' claims for fraud and conspiracy are personal to them.").

Here, Plaintiffs have failed to establish that they comprise a subgroup of minority interests or that they suffered any sort of special injury because of Melissa and the Children's alleged misconduct or Craig's breach of fiduciary duty and breach of contract. In particular, Plaintiffs are unable to prove any special injury relative to the harm to The Cheetah Fund itself or to the Fund's other limited

---

25 *Id.* ¶¶ 213–222.

26 ECF 180, at 10.

partners not party to this litigation.[27] For example, Plaintiffs cannot show that Melissa's alleged misconduct caused them any special harm because they do not allege that Melissa took action to induce them to invest (or continue investing) in The Cheetah Fund or to misappropriate Plaintiffs' specific investment funds. *See Medkser v. Feingold*, 307 F. App'x 262, 265 (11th Cir. 2008) ("[W]e fail to see how Plaintiffs identify that it was 'their' money that was transferred to personal accounts . . . after the money had become corporate money indistinguishable from the funds of all investors.").[28]

---

[27] Plaintiffs do not contest Melissa and the Children's argument that some of The Cheetah Fund's limited partners are not parties to this lawsuit. *Id*. "When a party fails to provide arguments on the merits of an issue, and makes only passing reference to it in the initial brief, the argument is deemed waived and we need not address it." *United States v. Evans*, 292 F. App'x 761, 762 (11th Cir. 2008). Further, in response to Melissa and the Children's assertion that "[o]f those awarded restitution, thirteen are Plaintiffs in this action and six are non-parties," Plaintiffs merely "[d]enied [this] as stated. The respective individuals and entities are not designated," without pointing to any record evidence in support of their denial. ECF 168-2, ¶ 2; ECF 180-3, ¶ 2. Accordingly, Melissa and the Children's fact alleging that some Cheetah Fund limited partners are not parties to this lawsuit is deemed admitted. *See* LR 56.1(B)(2)(a)(2), N.D. Ga. (noting that a movant's facts are admitted "unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence . . . ; (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material . . . .").

[28] Plaintiffs' failure to make such a showing not only underscores the fact that Melissa did not inflict a direct "special injury" on Plaintiffs, it undercuts the RICO claim against Melissa entirely because showing that a person conducted, participated in the conduct of, operated, or managed an enterprise's affairs is a necessary element of a § 1962(c) cause of action.

Further, Plaintiffs do not allege that they were uniquely impacted by the Children being unjustly enriched by their parents' spending of misappropriated funds, as opposed to how The Cheetah Fund itself and all other limited partners were affected by the same activity. *See Washtenaw Cnty. Emps.' Ret. Sys. v. Wells Real Est. Inv. Tr., Inc.*, 2008 WL 2302679, at *11 (N.D. Ga. Mar. 31, 2008) ("In this claim, the plaintiff has not alleged any injury to shareholders that is distinct from the injury to the company itself. Accordingly, the unjust enrichment claim is derivative in nature.").

Finally, Plaintiffs' claims against Craig for breach of fiduciary duty and breach of contract are premised solely on allegations that he "misappropriated investor funds and acted against the interests of the fund," by, for example, removing investment funds before The Cheetah Fund hit a certain rate of return.[29] These allegations accuse Craig of damaging The Cheetah Fund and its limited partners collectively, rather than having caused a direct injury to Plaintiffs alone. Together, these claims are "indistinguishable from the myriad claims of self-dealing and mismanagement that courts have held may only be brought as derivative claims." *Medkser*, 307 F. App'x at 265.

---

[29] ECF 68, ¶¶ 213–222.

Accordingly, Plaintiffs' RICO claim against Melissa, unjust enrichment claim against the Children, and breach of fiduciary duty and breach of contract claims against Craig belong to The Cheetah Fund, rather than to Plaintiffs individually, and are typical of the claims that can only be brought in a derivative, rather than direct, action. *See Barnett*, 306 Ga. App. at 152 ("[T]he general rule is that allegations of misappropriation of corporate assets . . . can only be pursued in a shareholder derivative suit brought on behalf of the corporation, since the injury is to the corporation and its shareholders collectively.").

In contrast, Plaintiffs' other claims against Craig (for RICO violations, securities violations, fraudulent inducement, fraudulent misrepresentation, and conspiracy) allege specific injuries to Plaintiffs alone. These causes of action are largely premised on statements Craig made to Plaintiffs themselves to encourage them to invest and continuing investing in The Cheetah Fund against their own interests.[30] Plaintiffs contend they suffered injuries because of their reliance on Craig's fraudulent statements, and these claims are not based on injuries stemming from the misappropriation of money directly from The Cheetah Fund itself.

For example, Plaintiffs' RICO claim against Craig centers on the fraudulent actions Craig took to deceive Plaintiffs into investing and continuing to invest,

---

30 *Id*. ¶¶ 116–212.

including acts of mail fraud, wire fraud, and copyright and trademark counterfeiting.[31] Further, the federal and state securities claims focus on similar devices and schemes employed by Craig to deceive Plaintiffs into investing (and continuing to invest).[32] Plaintiffs' claims for fraudulent inducement, fraudulent misrepresentation, and conspiracy are premised on the false statements and forged documents themselves.[33] Such claims belong solely to Plaintiffs, rather than The Cheetah Fund. Accordingly, Plaintiffs' causes of action against Craig for violations of RICO, federal and state securities violations, fraudulent inducement, fraudulent misrepresentation, and conspiracy may proceed to a determination of whether judgment in Plaintiffs' favor is warranted.

---

31 *Id*. ¶¶ 116–165. Plaintiffs' RICO claim against Craig is therefore different than what Plaintiffs allege against Melissa, because as to Craig they allege a special injury separate from those to The Cheetah Fund itself. Plaintiffs have therefore demonstrated that they have standing to bring their RICO claim against Craig in a direct action. *See Bivens Gardens Off. Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 906 (11th Cir. 1998) (discussing *Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. 1991)) ("[T]he defendant defrauded potential investors through the use of the mails by luring intended victims into buying stock in their company with illusory promises of control over the company. We held that the plaintiff had standing to bring a RICO claim because, as a target of the defendant's alleged scheme, his injury would have been a direct result of the defendant's substantive RICO violation.") (citation modified).

32 ECF 68, ¶¶ 166–174.

33 *Id*. ¶¶ 175–212.

### 2. Exception Two: Whether the Reasons for Requiring a Derivative Action Apply

As to the second exception to the derivative action rule, Plaintiffs have failed to show how bringing their claims against Melissa and the Children and their claims for breach of fiduciary duty and contract against Craig in a direct action would not prejudice the Fund's non-party limited partners or increase the likelihood of multiple additional lawsuits. *See Barnett*, 306 Ga. App. at 153 ("[N]ot all of [the company's] shareholders are parties to this suit. As such, there is a risk of multiple suits and of possible prejudice to the rights of the other shareholders.").

* * * *

In sum, Plaintiffs have failed to demonstrate standing to bring their claims against Melissa and the Children in a direct action.[34] As a result, while the parties spill a significant amount of ink arguing the merits of these claims, the Court need not consider them.[35] Summary judgment as to Plaintiffs' RICO and unjust

---

[34] Plaintiffs also seem to argue that they should be allowed to bring their claims directly because any recovery stemming from a derivative suit would enrich The Cheetah Fund, and by proxy, Melissa and the Children. ECF 180, at 12. Plaintiffs cite no authority for this proposition. Nor is there anything in the record that suggests a derivative action on behalf of The Cheetah Fund would benefit Melissa and the Children in any way. Rather, a derivative action would attempt to recover losses suffered by The Cheetah Fund, which was itself injured by Craig's misconduct, allowing all limited partners the same opportunity to benefit through their investment in the Fund.

[35] ECF 167, at 13; ECF 180, at 13.

enrichment claims is granted in favor of Melissa and the Children. And because the parties' discovery motions pertain to the merits of Plaintiffs' claims against Melissa and the Children, those motions are denied as moot.

Moreover, Plaintiffs cannot show that they can bring their breach of fiduciary duty and breach of contract claims against Craig in a direct action, so Plaintiffs are not entitled to judgment on those claims. Plaintiffs *do* have standing to maintain a direct action on their other claims against Craig. Whether Plaintiffs are entitled to default judgment on those claims depends on whether they have alleged facts sufficient to state viable causes of action. That analysis follows.

### B. Default Judgment on Plaintiffs' Remaining Claims Against Craig

#### 1. Applicable Legal Standards

Under Fed. R. Civ. P. 55, the Court may enter a final judgment of default against a party who has failed to plead in response to a complaint. Default judgment is appropriate where the well-pleaded allegations of fact are sufficient to state a claim for relief. *United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006). Thus, by having defaulted, Craig admits the well-pleaded allegations of fact in Plaintiffs' TAC. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "When considering a motion for default judgment, a court must investigate the legal sufficiency of the allegations and ensure that the

complaint states a plausible claim for relief." *Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d 1295, 1304 (N.D. Ga. 2017).

Plaintiffs' remaining claims against Craig for RICO violations, federal and state securities violations, fraudulent inducement, fraudulent misrepresentation, and conspiracy sound in fraud, and accordingly, must be pleaded with particularity to satisfy the heightened requirements of Fed. R. Civ. P. 9(b). *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (RICO); *Sec. & Exch. Comm'n v. Strebinger*, 114 F. Supp. 3d 1321, 1329 (N.D. Ga. 2015) (Section 10(b) of the Exchange Act and Rule 10b-5); *Shea v. Best Buy Homes, LLC*, 533 F. Supp. 3d 1321, 1330 (N.D. Ga. 2021) (fraudulent inducement); *Interactive Learning Sys. Inc. v. Minerva Cap. Mgmt. Inc.*, 2021 WL 5033459, at *4 (N.D. Ga. Aug. 30, 2021) (fraudulent misrepresentation); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007) (conspiracy to commit fraud). Generally, to comply with Rule 9(b), Plaintiffs must plead the "who, what, when, where, and how" of the alleged fraud. *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 873 (11th Cir. 2023).

**2. Plaintiffs fail to state a civil conspiracy claim against Craig.**

To prove conspiracy, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort. *See Howard v. Sellers & Warren, P.C.*, 309 Ga. App. 302, 306 (2011). Generally, more than one person is necessary to form a conspiracy. *See Nayani v. Bhatia*, 371 Ga. App. 44, 51 (2024).

Plaintiffs allege that Craig "acting through" CMA Capital fraudulently conspired to deceive Plaintiffs and others into investing in The Cheetah Fund.[36] However, Plaintiffs' allegations fail to establish that Craig and CMA Capital were distinct entities that could conspire together. In fact, Plaintiffs' allegations show little daylight between Craig and his corporate doppelgänger.

A plaintiff pierces an entity's corporate veil when he demonstrates that the defendants "disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs, that the corporation and its owners have such unity of interest and ownership that they lack separate personalities, and that to observe the corporate form would work an injustice or promote fraud." *United States v. Fid. Cap. Corp.*, 920 F.2d 827, 837 (11th Cir. 1991). "[E]vidence of abuse, such as evidence that the controlling person commingled the corporation's assets with his own or those of other corporations he controlled . . . is essential." *Id.* Plaintiffs allege that Craig alone controlled and operated CMA Capital, and that Craig misappropriated the entity's funds for his own personal benefit.[37] Craig admits those allegations by virtue of his default. He abused the corporate form and is not a separate legal person from CMA Capital. Plaintiffs go so far as to allege that Craig was the *de facto* general partner of the Fund through his "control and

---

[36] ECF 68, ¶ 202.

[37] *Id.* ¶¶ 23, 202–203.

management" of CMA Capital.[38] CMA Capital was not operated as a legal entity separate from Craig and Craig cannot conspire with himself.[39] Other courts in this Circuit have held that owners or managing directors of corporate entities cannot conspire with those corporate entities. *See Dutta Horse Transp., Inc. v. Wayne Jenkins, Travelplus Promotions, LLC*, 2026 WL 1024420, at *5 (S.D. Fla. Mar. 30, 2026) ("[A]n LLC cannot conspire with its managing member."); *see also Kurlander v. Kaplan*, 2019 WL 3944338, at *7 (M.D. Fla. Aug. 21, 2019) ("[Defendants] acting in their roles as partners of the [corporate firm] cannot conspire with the [corporate firm] because they are a single legal entity."). Plaintiffs have failed to demonstrate that "two or more persons act[ed] in concert" as required to establish a claim for civil conspiracy, so they are not entitled to judgment on this claim. *Howard*, 309 Ga. App. at 306.

---

38 *Id.*

39 *Id.* ¶¶ 201–212.

**3. Plaintiffs are entitled to default judgment on their claims for RICO violations, federal and state securities violations, fraudulent inducement, and fraudulent misrepresentation.**

In contrast to their conspiracy claim, Plaintiffs have sufficiently stated their other claims and are entitled to judgment against Craig on them.

***i.* RICO**

To succeed on a federal RICO claim, a plaintiff must allege "that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). Here, Plaintiffs assert that Craig operated The Cheetah Fund (the enterprise), and committed multiple acts of racketeering activity, including fraudulently inducing Plaintiffs to invest and continue investing; transmitting false statements and documents to Plaintiffs via mail and wire; forging documents; and misappropriating funds from The Cheetah Fund, directly causing Plaintiffs monetary loss.[40] For example, Plaintiffs allege that Craig created and transmitted sham financial statements and other documents to Plaintiffs that falsely bore the copyrights and trademarks of The Cheetah Fund's accountant, and wrongfully withdrew management fees and misappropriated

[40] *Id.* ¶¶ 116–165.

other investment funds for his own personal gain and enjoyment.[41] Having defaulted, Craig admits these allegations. Accordingly, Plaintiffs are entitled to judgment as to their RICO claim against Craig.

#### *ii.* Violation of Section 10(b) of the Exchange Act and Rule 10b-5

Section 10(b) and Rule 10b-5 prohibit the use of manipulative or deceptive devices to buy or sell securities. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006). To state a claim under Section 10(b) of the Exchange Act and under Rule 10b–5, a plaintiff must allege: "(1) a misstatement or omission of material fact, (2) made with scienter, (3) upon which the plaintiff justifiably relied, (4) that proximately caused the plaintiff's damages." *In re Sci. Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1349 (N.D. Ga. 2010).

Plaintiffs allege with particularity that Craig repeatedly and intentionally lied to them about the health of their investments in The Cheetah Fund, using various falsified financial statements and documents in the process; those untruths caused Plaintiffs to initially invest and to continue to make new investments in The Cheetah Fund.[42] For example, Plaintiffs allege that Craig misrepresented that the Fund "had several million dollars in assets" and reported to investors monthly

---

41 *Id.*

42 *Id.* ¶¶ 40, 45, 46, 48, 53, 54, 116–169.

that the Fund was "experiencing financial gains." Craig's statements ultimately caused Plaintiffs to invest in The Cheetah Fund; moreover, "[d]ue to their belief that the Fund was profitable, some Plaintiffs invested additional funds."[43] Plaintiffs further allege that they "suffered damages in connection with their purchases of securities" as a result of Craig's misstatements and misappropriation of The Cheetah Fund's assets.[44] This is enough to state a federal securities fraud claim. *See Sec. & Exch. Comm'n v. Zandford*, 535 U.S. 813, 819 (2002) ("[A] broker who accepts payment for securities that he never intends to deliver, or who sells customer securities with intent to misappropriate the proceeds, violates § 10(b) and Rule 10b–5."); *see also Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1349 (11th Cir. 2008) ("[Plaintiff] is complaining about fraud that induced it to invest . . . which means that its claims are 'in connection with the purchase or sale' of a security.").[45] Accordingly, Plaintiffs are entitled to default judgment against Craig as to their securities fraud claim.

---

43 *Id.* ¶¶ 40–46, 49–54.

44 *Id.* ¶ 169.

45 Plaintiffs' TAC is not particularly clear as to whether Craig actually traded any of Plaintiffs' investment funds, or if he simply diverted all of the money for personal use. *Id.* ¶ 192. However, the Eleventh Circuit has interpreted the requirement that a Section 10(b) claim be "in connection with the purchase or sale of any security" broadly and has made clear that such a fraud "may occur even without an actual purchase or sale of securities." *Sec. & Exch. Comm'n v. Goble*, 682 F.3d 934, 946 (11th Cir. 2012); *see also Grippo v. Perazzo*, 357 F.3d 1218, 1223–24 (11th Cir. 2004) ("We conclude [plaintiff] adequately pled fraud 'in

### *iii.* Violation of the Georgia Uniform Securities Act

The Georgia Uniform Securities Act prohibits investment advisers from "employ[ing] a device, scheme, or artifice to defraud another person" or acting in any way that operates as "fraud or deceit upon another person." O.C.G.A. § 10-5-51(a)(1)–(2). Plaintiffs allege that Craig fraudulently advised them in monthly reports and other writings about The Cheetah Fund's health and how investment funds were used, and that these misrepresentations encouraged Plaintiffs to initially invest, to continue to invest more, and ultimately to lose money.[46] Accordingly, Plaintiffs have stated a claim under O.C.G.A § 10-5-51 and are entitled to judgment on it.

### *iv.* Fraudulent Inducement[47]

To succeed on a claim for fraudulent inducement, a plaintiff must show "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Argentum Int'l*, 280 Ga. App. at 443 (quoting *ReMax N.*

---

connection with the purchase or sale of any security,' even though he failed to identify any particular security purchased, because [defendant] accepted and deposited [plaintiff's] monies as payment for securities.").

46 ECF 68, ¶¶ 40–46, 49–54, 170–174.

47 Plaintiffs assert this claim as being both for "fraudulent inducement" and "fraud in the execution." *Id.* ¶¶ 175–186. However, the complaint only contains facts that support a fraudulent inducement cause of action.

*Atlanta v. Clark*, 244 Ga. App. 890, 893 (2000)). Plaintiffs allege that Craig intentionally made a number of material misrepresentations "for the purposes of inducing Plaintiffs to execute the Fund's limited partnership agreement and to invest their money," and that Plaintiffs relied on these misrepresentations.[48] Craig's false statements included those about the amount of assets in the Fund, that the Fund would be regularly audited by licensed accountants, that the Fund had a high rate of return, and that the Fund had no management fee.[49] Plaintiffs additionally allege that Craig forged accounting documents bearing the trademark of The Cheetah Fund's accountant to fraudulently reassure the limited partners that the Fund was making gains and was a reliable investment.[50] Accordingly, Plaintiffs have adequately pleaded and are entitled to default judgment as to their claims for fraudulent inducement against Craig.

#### *v.* Fraudulent Misrepresentation

To state a claim for fraudulent misrepresentation, a plaintiff must establish the same elements as for other fraud claims. *See Bacote v. Wyckoff,* 251 Ga. 862, 865 (1984) ("To recover in tort for fraud, the plaintiff must prove five essential elements: (1) that the defendant made representations; (2) that at the time he knew

---

48 *Id.* ¶¶ 40–46, 49–54, 170–174.

49 *Id.* ¶¶ 40–45.

50 *Id.* ¶¶ 146–147, 179–180.

they were false; (3) that he made them with the intention and purpose of deceiving the plaintiff; (4) that the plaintiff relied on the representations; and (5) that the plaintiff sustained the alleged loss and damage as the proximate result of their having been made."). Here, Plaintiffs allege that Craig made numerous material misrepresentations that Plaintiffs relied on in investing and continuing to invest in The Cheetah Fund. For example, Plaintiffs allege that Craig repeatedly lied about the health of The Cheetah Fund to elicit new and continued investments, and that once Plaintiffs invested, he misrepresented that those funds were actually traded rather than transferred to his personal accounts.[51] Plaintiffs have adequately pleaded fraudulent misrepresentation and are entitled to default judgment against Craig on this count.

***vi.* Damages and Fees**

Finally, because Plaintiffs have adequately demonstrated that they are entitled to default judgment as to some of their claims against Craig, they are entitled to damages. "A court has an obligation to assure that there is a legitimate

---

51 Plaintiffs' claims for fraudulent inducement and fraudulent misrepresentation make many of the same allegations. *Id*. ¶¶ 175–200. However, Plaintiffs' fraudulent inducement claim primarily focuses on Craig's misrepresentations to induce Plaintiffs to become limited partners of The Cheetah Fund and to make their initial investments, while Plaintiffs' fraudulent misrepresentation claim widens the scope of Craig's misrepresentations to include statements made to Plaintiffs even after they became limited partners. *Id*. Therefore, the Court finds that these claims are not redundant, and Plaintiffs are entitled to default judgment on both claims separately.

basis for any damage award it enters, and to assure that damages are not awarded solely as the result of an unrepresented defendant's failure to respond . . . ." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "Damages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (citation modified). An evidentiary hearing on damages is generally required unless the damages are liquidated or capable of mathematical calculation. *See SED Int'l, Inc. v. Kage Sys.*, 2009 WL 4641778, at *2 (N.D. Ga. Dec. 1, 2009).

Plaintiffs have not submitted evidence with their motion showing a legitimate basis for the damages and fees they seek.[52] Accordingly, Plaintiffs will be required to submit detailed declarations supporting their damages demand. The Court may set an evidentiary hearing to determine the appropriate amount of damages following Plaintiffs' submission.

**C. Melissa and the Children's Defamation Counterclaim**

Summary judgment is appropriate when "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a

---

52 ECF 164.

rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Melissa and the Children move for summary judgment on their counterclaim for defamation, specifically, libel.[53] Under Georgia law, libel is a form of false and malicious defamation, expressed in print, writing, pictures, or signs, that intends to "injure the reputation" of another individual and "[expose] him to public hatred, contempt, or ridicule." O.C.G.A. § 51-5-1(a). Such a claim has four elements: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Am. Civil Liberties Union, Inc. v. Zeh*, 312 Ga. 647, 650 (2021) (quoting *Mathis v. Cannon*, 276 Ga. 16, 20–21 (2002)); *see also H&R Block E. Enters., Inc. v. Morris*, 606 F.3d 1285, 1296 (11th Cir. 2010) ("In Georgia, a statement generally may support a claim for defamation only if it is false, published, and unprivileged.").

Melissa and the Children's libel claim is premised on Plaintiffs' allegations against them in this lawsuit, to wit, that they helped further Craig's crimes or unjustly benefited from his criminal conduct.[54] However, "[a]ll charges,

---

53 ECF 167, at 28–31.

54 ECF 74, at 84.

allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged." O.C.G.A. § 51-5-8. The privilege granted under O.C.G.A. § 51-5-8 is absolute. *See McCauley v. Powell*, 373 Ga. App. 169, 174 (2024). Accordingly, such allegations cannot form the basis of a libel claim. *See FieldTurf USA Inc. v. TenCate Thiolon Middle E.*, 945 F. Supp. 2d 1379, 1391–92 (N.D. Ga. 2013) (granting summary judgment where allegedly libelous letters repeated allegations in a lawsuit and were therefore privileged).

Melissa and the Children aver that Plaintiffs' allegations intended to injure their reputation.[55] That, however, is irrelevant. Communications that "are afforded an absolute privilege cannot form the basis of a defamation action, regardless of the falsity of the statements or the speaker's malicious intent." *Saye v. Deloitte & Touche, LLP*, 295 Ga. App. 128, 131 (2008).

Melissa and the Children further argue that Plaintiffs' allegations are not privileged because they were not "pertinent and material to the relief sought."[56] "Strict legal materiality or relevancy is not required to confer the privilege; and in determining what is relevant or pertinent the courts are liberal, resolving all doubt in favor of relevancy or pertinency." *McCauley*, 373 Ga. App. at 174 (quoting *Veazy*

---

[55] ECF 167, at 28–31.

[56] *Id.*

*v. Blair*, 86 Ga. App. 721, 725 (1952)). Plaintiffs' detailed allegations that Melissa and the Children took part in or benefitted from Craig's fraudulent scheme were plainly included in the TAC to provide support for Plaintiffs' RICO and unjust enrichment claims.[57] Those allegations were "relevant" as required under Georgia defamation law. *See Dennis v. Adcock*, 138 Ga. App. 425, 429 (1976) ("It should also be observed that in libel and slander cases there is an absolute privilege as to pertinent evidence introduced in a judicial proceeding and relating to its subject matter."). Summary judgment for Melissa and the Children on their defamation counterclaim is denied.

The Court recognizes that Plaintiffs did not move for summary judgment on this counterclaim. If Plaintiffs want the Court to dismiss it, they will be permitted to file a motion for judgment on the pleadings. However, undersigned encourages counsel for the parties to work to resolve the counterclaim without the need for additional briefing.

## III. CONCLUSION

Defendants Melissa and the Children's motion for summary judgment [ECF 167] is **GRANTED in part** and **DENIED in part**. It is granted as to Plaintiffs' RICO and unjust enrichment claims and it is denied as to the defamation counterclaim. If Plaintiffs want to seek dismissal of the counterclaim against them,

---

57 ECF 68, ¶¶ 151–158, 223–229.

they are **DIRECTED** to file a motion for judgment on the pleadings within 30 days of this Order. Any such motion and supporting brief shall not exceed 15 pages and shall address only the defamation counterclaim.

Melissa and the Children's motion to exclude the affidavit of Karen Fortune [ECF 183]; motion to exclude the affidavit of Grady Kittrell [ECF 185]; and motion to exclude evidence [ECF 184] are **DENIED AS MOOT**.

Further, Plaintiffs' motion for default judgment [ECF 164] is **GRANTED in part** and **DENIED in part**. It is granted as to Plaintiffs' claims against Defendant Craig Allen for (1) violation of the RICO Act; (2) violation of Section 10(b) of the Exchange Act and Rule 10b-5; (3) violation of the Georgia Uniform Securities Act of 2008; (4) fraudulent inducement; and (5) fraudulent misrepresentation. It is denied as to Plaintiffs' claim against Craig for (1) conspiracy to commit fraud; (2) breach of fiduciary duty; and (3) breach of contract. Plaintiffs' motion for leave to file a sur-reply [ECF 187]; motion to compel [ECF 190]; and consent motion concerning discovery [ECF 191] are **DENIED as moot**.

Within 30 days of this Order, Plaintiffs are **ORDERED** to submit declarations supporting their requests for damages and other fees against Craig.

The Clerk is **DIRECTED** to submit this Order to undersigned after 30 days.

**SO ORDERED** this 17th day of September 2026.

Steven D. Grimberg
United States District Judge